IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF ARKANSAS
CENTRAL DIVISION

| | | |
|---|---|---|
| DAIRY FARMERS OF AMERICA, INC., | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Case No. 4:25-cv-000662-JM |
| | ) | |
| WESTROCK COFFEE COMPANY, | ) | **JURY TRIAL DEMANDED** |
| WESTROCK BEVERAGE COMPANY, | ) | |
| LLC, JULIA ISAKSON, | ) | |
| BRIAN IZDEPSKI, REBECCA | ) | |
| HUCKABAY, CEDRIC SMITH, | ) | |
| DUSTIN SLAGLE, PATRICIA | ) | |
| BETHUREM, AND WENDY DAVIS | ) | |
| | ) | |
| Defendants. | | |

**SECOND AMENDED COMPLAINT**

Plaintiff Dairy Farmers of America, Inc. ("DFA") states as follows for its Complaint against Defendants Westrock Coffee Company ("Westrock Coffee") and Westrock Beverage Company, LLC ("WBC") (collectively "Westrock"), Julia Isakson, Brian Izdepski, Rebecca Huckabay, Cedric Smith, Dustin Slagle, Patricia Bethurem, and Wendy Davis (collectively "Individual Defendants").

**PARTIES, JURISDICTION AND VENUE**

1.      DFA is organized under the laws of the State of Kansas and maintains its principal place of business in Kansas City, Kansas.

2.      Westrock Coffee is incorporated in the State of Delaware and maintains its principal place of business in Little Rock, Arkansas.

1

3.      WBC is a Delaware limited liability company wholly owned, managed, and controlled by Defendant Westrock Coffee. For purposes of diversity jurisdiction, WBC is a citizen of Arkansas.

4.      Westrock Coffee is a publicly traded company and it maintains a publicly accessible website: https://westrockcoffee.com ("Westrock Website") identifying properties and businesses that it operates and certain persons that it employs.

5.      Westrock Coffee uses its website to sell its products, such as the products manufactured and produced by it and its wholly owned subsidiaries—including WBC—and identifies all properties and businesses as its own, including the WBC facility in Conway, Arkansas.

6.      Julia Isakson ("Isakson") is an individual residing in Faulkner County, Arkansas, who can be found at 2390 Quattlebaum Cove, Conway, Arkansas, 72034. Isakson is a former employee of DFA and current employee of Westrock.

7.      Brian Izdepski ("Izdepski") is an individual residing in Webster County, Missouri, who can be found at 3406 Panther Creek Rd, Fordland, Missouri 65652. Izdepski is a former employee of DFA, a current employee of Westrock.

8.      Rebecca Huckabay ("Huckabay") is an individual residing in Faulkner County, Arkansas, who can be found at 3100 Irby Dr, Apt 3103, Conway, Arkansas 72034. Huckabay is a former employee of DFA and a current employee of Westrock.

9.      Cedric Smith ("Smith") is an individual residing in Faulkner County, Arkansas, who can be found at 5695 Spencer Lake Drive, Conway, Arkansas 72034. Smith is a former employee of DFA and a current employee of Westrock.

10. Dustin Slagle ("Slagle") is an individual residing in Pulaski County, Arkansas, who can be found at 3120 N Hills Blv, Unit 11206, North Little Rock, Arkansas 72116. Slagle is a former employee of DFA and a current employee of Westrock.

11. Patricia Bethurem ("Bethurem") is an individual residing in Greene County, Missouri, who can be found at 7662 N Farm Rd 9, Ash Grove, MO 65604. Bethurem is a former employee of DFA.

12. Wendy Davis ("Davis") is an individual residing in Wright County, Missouri, who can be found at 4386 S Highway E, Norwood, MO 65717. Davis is a former employee of DFA and a current employee of Westrock.

13. This Court has jurisdiction over this matter pursuant to Judge Wimes's order transferring this matter from the United States District Court for the Western District of Missouri to the United States District Court for the Eastern District of Arkansas, Central Division, Docket No. 90.

14. This Court has personal jurisdiction over the Missouri resident defendants as the confidential, proprietary information that was improperly taken and utilized by these Defendants in the State of Missouri and Arkansas.

## FACTS APPLICABLE TO ALL COUNTS

15. DFA operates two manufacturing facilities in Greene County and Texas County, Missouri (respectively). Both are primarily engaged in retort operations with respect to creating shelf-stable, ready-to-drink coffee products. DFA has created, established, and refined the processes to support these products for almost thirty years. DFA is recognized as an industry leader in the field.

16. DFA has entered into confidential packing agreements with a joint venture to manufacture, market, sell, and distribute extremely popular ready-to-drink coffee and energy beverages ("Joint Venture Agreements").

17. The entire manufacturing capacity of DFA's Greene County, Missouri facility is dedicated to manufacturing these coffee products pursuant to the Joint Venture Agreements. More than one-third of DFA's Texas County facility is dedicated to manufacturing pursuant to the Joint Venture Agreements.

18. On November 2, 2022, Westrock Coffee issued a press release, published on the Westrock Website that defendant Cedric Smith "joins the team" as Vice President and Plant Manager of the Conway facility.

19. The Westrock Website identifies Westrock Coffee as the owner of the Conway facility that Mr. Smith manages.

20. The Arkansas Department of Environmental Quality Permit for the Conway facility identifies WBC as the owner of the Conway facility.

21. WBC is a wholly owned subsidiary of Westrock Coffee and is operated, managed, and completely controlled by its parent company, Westrock Coffee.

22. WBC shares common managers, officers, and employees with Westrock Coffee, and the entities operate as a single business enterprise.

23. On information and belief, Westrock Coffee and WBC are directly soliciting the joint venture to manufacture products identical to those that DFA is currently manufacturing pursuant to the Joint Venture Agreements.

24. On information and belief, Westrock will manufacture products that DFA would otherwise manufacture and/or will directly compete with products manufactured by DFA at

its Conway facility where the individual defendants and former DFA employees now work or work remotely from Missouri.

### *WHISTLEBLOWER*

25. On May 6, 2024, the DFA Ethics and Compliance Department received a report from either a WBC or Westrock Coffee employee ("Whistleblower") who worked at the new WBC Conway facility, stating that former DFA employees—now employed by Westrock—were actively recruiting DFA employees from Cabool to work at the Conway facility.

26. This Whistleblower also reported that former DFA employees secretly obtained confidential and proprietary DFA quality assurance procedures, formulas, pricing information, and food plans so that Westrock could implement and incorporate the trade secrets at the Conway facility. The secretly obtained information included, among other types of information, specific recipes for products and pictures of manufacturing lines that would assist in construction and improvement of the Westrock manufacturing equipment ("Confidential Trade Secret Information").

27. The Confidential Trade Secret Information included information that DFA was to hold in strictest confidence pursuant to its Joint Venture Agreements.

28. Without DFA's permission or knowledge, the Individual Defendants obtained DFA Confidential Trade Secret Information prior to their departure from DFA and shared that information with Westrock. Westrock induced, solicited, and/or recruited the Individual Defendants to obtain the Confidential Trade Secret Information.

29. The Individual Defendants and Westrock leadership were aware that the Confidential Trade Secret Information was proprietary to DFA.

30. According to the Whistleblower, after reporting his concerns to leadership at Westrock, his employment was terminated.

31. Upon receipt of the report from the Whistleblower, DFA began an investigation into the allegations.

## *WESTROCK FACILITY*

32. On June 13, 2024, Westrock opened the Conway facility, which purports to be the largest ready-to-drink manufacturing facility in North America.

33. Upon information and belief, Westrock's Conway facility manufactures or will manufacture the exact type of products manufactured by DFA.

34. Westrock issued offer letters to each of the Individual Defendants. All of the relevant offer letters identified "Westrock Coffee Company" as the entity offering employment.

35. On September 10, 2024, counsel for Plaintiff sent a letter to Westrock, informing Westrock of the report by their employee and placing them on notice of the misappropriation of DFA's Confidential Trade Secret Information.

36. The letter also notified Westrock of their duty to preserve electronic files and reminded them that DFA's former employees have continuing obligations to DFA under the DFA Employee Non-Disclosure, Ethics, and Conflict of Interest Agreement and/or individual severance agreements.

37. On October 22, 2024, counsel for Westrock responded to DFA, acknowledging that they had in their possession DFA's Confidential Trade Secret Information. He further referred to the Individual Defendants as, "several Westrock employees who were formerly employed at Dairy Farmers of America, Inc."

38.     On information and belief, the Individual Defendants worked for Westrock Coffee or WBC during the relevant period.

### *PRICING*

39.     Westrock also recruited Defendants Slagle and Bethurem for the specific purpose of obtaining DFA's confidential pricing information for the products manufactured by DFA at the Greene and Texas County facilities.

40.     The confidential pricing information includes not only the prices charged to the Joint Venture and others, but also source and material prices and the cost of manufacture.

41.     On information and belief, Defendants Slagle and Bethurem have, without DFA's consent or permission, disclosed the confidential pricing information to Westrock. The confidential pricing information is a DFA trade secret and is included in the definition of Confidential Trade Secret Information.

## COUNT I – MISAPPROPRIATION OF TRADE SECRETS PURSUANT TO DEFEND TRADE SECRETS ACT, 18 U.S.C. § 1836
## (AGAINST ALL DEFENDANTS)

42. Plaintiff restates and realleges each and every allegation set forth in the preceding paragraphs as if fully set forth herein.

43. The Confidential Trade Secret Information the Individual Defendants took from DFA are trade secrets. The information has economic value, is not readily ascertainable by proper means, and DFA has made reasonable efforts to keep this information secret.

44. On information and belief, the Individual Defendants were induced, solicited, and/or recruited by Westrock to obtain the DFA Confidential Trade Secret Information.

45. Each item consisting of Confidential Trade Secret Information contains data and other information not available to the public at large and compiled and created by DFA at its own considerable time and expense. DFA derives substantial economic value from this information not being known to competitors or the public.

46. The DFA Confidential Trade Secret Information is directly related to products intended for use in, and actually used in, interstate commerce.

47. The Individual Defendants and Westrock engaged in misappropriation when they improperly obtained DFA's Confidential Trade Secret Information.

48. The Individual Defendants and Westrock used improper means to acquire knowledge of DFA's Confidential Trade Secret Information.

49. The Individual Defendants and Westrock knew or had reason to know that the DFA Confidential Trade Secret Information was acquired by improper means and/or derived through persons who owed a duty to DFA to maintain its secrecy.

50. Westrock has been unjustly enriched through its misappropriation of DFA's trade secrets.

51. As a result of Defendants' misappropriation, DFA has and will suffer substantial damages.

WHEREFORE, Plaintiff prays the Court enter judgment in its favor and against Defendants, jointly and severally; that the Court enjoin Defendants from its use of DFA's Confidential Trade Secret Information and that all Confidential Trade Secret Information be returned, including information incorporated into Westrock's business; that the Court award actual damages in an amount that is fair and reasonable for all damages sustained as a result of their misappropriation of trade secrets, awarding punitive damages, awarding pre-judgment and post-judgment interest at the highest lawful rate, awarding Plaintiff its reasonable attorneys' fees, costs, and expenses incurred herein, and for such other and further relief as the court deems just and proper under the circumstances.

## COUNT II – MISAPPROPRIATION OF TRADE SECRETS IN VIOLATION OF MISSOURI TRADE SECRETS ACT ("MUTSA"), MO. REV. STAT. §§ 417.450 ET SEQ.
## (AGAINST ALL DEFENDANTS)

52. Plaintiff restates and realleges each and every allegation set forth in the preceding paragraphs as if fully set forth herein.

53. The Confidential Trade Secret Information the Individual Defendants took from DFA are trade secrets. The information has economic value, is not readily ascertainable by proper means, and DFA has made reasonable efforts to keep this information secret.

54. On information and belief, the Individual Defendants were induced, directed, and/or recruited by Westrock to obtain the DFA Confidential Trade Secret Information.

55. Each item consisting of Confidential Trade Secret Information contains data and other information not available to the public at large and compiled and created by DFA at its own considerable time and expense. DFA derives substantial economic value from this information not being known to competitors or the public.

56. The Individual Defendants and Westrock engaged in misappropriation when they improperly obtained DFA's Confidential Trade Secret Information.

57. The Individual Defendants and Westrock used improper means to acquire knowledge of DFA's Confidential Trade Secret Information.

58. The Individual Defendants and Westrock knew or had reason to know that the DFA Confidential Trade Secret Information was acquired by improper means and/or derived through persons who owed a duty to DFA to maintain its secrecy.

59. Westrock has been unjustly enriched through its misappropriation of DFA's trade secrets.

60.     As a result of Defendants' misappropriation, DFA has and will suffer substantial damages. DFA is entitled to punitive damages for Defendants' willful, intentional and malicious actions.

WHEREFORE, Plaintiff prays the Court enter judgment in its favor and against Defendants, jointly and severally; that the Court enjoin Defendants from its use of DFA's Confidential Trade Secret Information and that all Confidential Trade Secret Information be returned, including information incorporated into Westrock's business; that the Court award actual damages in an amount that is fair and reasonable for all damages sustained as a result of their misappropriation of trade secrets, awarding punitive damages, awarding pre-judgment and post-judgment interest at the highest lawful rate, awarding Plaintiff its reasonable attorneys' fees, costs, and expenses incurred herein, and for such other and further relief as the court deems just and proper under the circumstances.

## COUNT III – MISAPPROPRIATION OF TRADE SECRETS IN VIOLATION OF ARKANSAS UNIFORM TRADE SECRETS ACT, ARK. CODE ANN. § 4-75-601 ET SEQ.
## (AGAINST ALL DEFENDANTS)

61.     Plaintiff restates and realleges each and every allegation set forth in the preceding paragraphs as if fully set forth in.

62.     The Confidential Trade Secret Information the Individual Defendants took from DFA are trade secrets. The information has economic value, is not readily ascertainable by proper means, and DFA has made reasonable efforts to keep this information secret.

63.     On information and belief, the Individual Defendants were induced, directed, and/or recruited by Westrock to obtain the DFA Confidential Trade Secret Information.

64. Each item consisting of Confidential Trade Secret Information contains data and other information not available to the public at large and compiled and created by DFA at its own considerable time and expense. DFA derives substantial economic value from this information not being known to competitors or the public.

65. The Individual Defendants and Westrock engaged in misappropriation when they improperly obtained DFA's Confidential Trade Secret Information.

66. The Individual Defendants and Westrock used improper means to acquire knowledge of DFA's Confidential Trade Secret Information.

67. The Individual Defendants and Westrock knew or had reason to know that the DFA Confidential Trade Secret Information was acquired by improper means and/or derived through persons who owed a duty to DFA to maintain its secrecy.

68. Westrock has been unjustly enriched through its misappropriation of DFA's Confidential Trade Secret Information.

69. As a result of Defendants' misappropriation, DFA has and will suffer substantial damages.

WHEREFORE, Plaintiff prays the Court enter judgment in its favor and against Defendants, jointly and severally; that the Court enjoin Defendants from its use of DFA's Confidential Trade Secret Information and that all Confidential Trade Secret Information be returned, including information incorporated into Westrock's business; that the Court award actual damages in an amount that is fair and reasonable for all damages sustained as a result of their misappropriation of trade secrets, awarding punitive damages, awarding pre-judgment and post-judgment interest at the highest lawful rate, awarding Plaintiff its reasonable attorneys' fees, costs, and expenses

incurred herein, and for such other and further relief as the court deems just and proper under the circumstances.

### COUNT IV – BREACH OF CONTRACT
### (AGAINST DEFENDANTS ISAKSON, IZDEPSKI, HUCKABAY, SMITH, SLAGLE, BETHUREM, AND DAVIS)

70. Plaintiff restates and realleges each and every allegation set forth in the preceding paragraphs as if fully set forth herein.

71. The Individual Defendants are all former employees of DFA.

72. During the course of their employment, the Individual Defendants each agreed to DFA's "Employee Non-Disclosure, Ethics, and Conflict of Interest Agreement" ("Employee Non-Disclosure Agreement"). A copy of the respective Employee Non-Disclosure Agreements and the acknowledgements of the Individual Defendants are attached hereto as Exhibits A-H.

73. Each of the Employee Non-Disclosure Agreements state, in relevant part, "Employee acknowledges that certain items . . . used in the Company's business are secret, confidential, proprietary, unique, and valuable and were developed by the Company, and further, that disclosure of any items to anyone other than an employee of the Company, unless otherwise directed in writing by an officer of the Company, will cause the Company irreparable injury."

74. Each Employee Non-Disclosure Agreement lists, among other items, "manufacturing processes, chemical formulas, and the composition of the Company's products in whole or in part," and "employee records, lists, contact information, and other confidential employee data" as confidential information.

75. Each Employee Non-Disclosure Agreement further provides: "Employee acknowledges that books and records, either paper or electronic format, are Company property and that unauthorized access, alteration, and/or removal is a violation of Company policy and may also be illegal. This includes, but is not limited to, documents; manuals; lists; computer disks; employee information, files, lists, and records; member information, files, lists, and records; and any other information that employees use in their daily work."

76. Each Employee Non-Disclosure Agreement prohibits employee disclosure of the Company's confidential information or trade secrets and is binding even after the end of the employee's employment with DFA.

77. The Individual Defendants breached their respective Employee Non-Disclosure Agreement by retaining DFA trade secrets upon the termination of their employment and/or disseminating DFA trade secrets to their new employer, Westrock.

78. The Individual Defendants have breached each of their respective Employee Non-Disclosure Agreement by retaining confidential DFA employee information and conspiring with other former DFA employees to obtain additional Confidential Trade Secret Information and/or induce them to work for Westrock.

WHEREFORE, Plaintiff prays the Court enter judgment in its favor and against the Individual Defendants, and each of them, jointly and severally; that the Court enjoin Defendants from its use of DFA's Confidential Trade Secret Information and that all Confidential Trade Secret Information be returned, including information incorporated into Westrock's business; that the Court award actual damages in an amount that is fair and reasonable for all damages sustained as a result of their misappropriation of trade secrets, awarding punitive damages, awarding pre-judgment and post-judgment interest at the highest lawful rate, awarding Plaintiff

its reasonable attorneys' fees, costs, and expenses incurred herein, and for such other and further relief as the court deems just and proper under the circumstances.

### COUNT V – BREACH OF DUTY OF LOYALTY
### (AGAINST DEFENDANTS ISAKSON, IZDEPSKI, HUCKABAY, SMITH, SLAGLE, BETHUREM, AND DAVIS)

79. Plaintiff restates and realleges each and every allegation set forth in the preceding paragraphs as if fully set forth herein.

80. As employees of DFA, the Individual Defendants owed DFA a duty of loyalty.

81. The Individual Defendants breached this duty of loyalty by retaining DFA Confidential Trade Secret Information.

82. The Individual Defendants breached this duty of loyalty by disseminating DFA Confidential Trade Secret Information to Westrock.

83. As a result of the breach of the duty of loyalty by the Individual Defendants, Plaintiff suffered damages as set forth herein.

WHEREFORE, Plaintiff prays the Court enter judgment in its favor and against the Individual Defendants, and each of them, jointly and severally; that the Court enjoin Defendants from its use of DFA's Confidential Trade Secret Information and that all Confidential Trade Secret Information be returned, including information incorporated into Westrock's business; that the Court award actual damages in an amount that is fair and reasonable for all damages sustained as a result of their misappropriation of trade secrets, awarding punitive damages, awarding pre-judgment and post-judgment interest at the highest lawful rate, awarding Plaintiff its reasonable attorneys' fees, costs, and expenses incurred herein, and for such other and further relief as the court deems just and proper under the circumstances.

## COUNT VI – BREACH OF CONTRACT
## (AGAINST DEFENDANT JULIA ISAKSON)

84. Plaintiff restates and realleges each and every allegation set forth in the preceding paragraphs as if fully set forth herein.

85. Defendant Isakson began her employment with DFA on September 22, 2016.

86. On November 27, 2023, Defendant Isakson was notified that due to a DFA plant closure, her employment would be ending.

87. On January 16 and 25, 2024, Defendant Isakson downloaded proprietary DFA information.

88. January 26, 2024 was Defendant Isakson's last day of employment with DFA.

89. On the same day, Defendant Isakson executed a Separation Agreement and General Release. A redacted copy is attached here as Exhibit I.

90. The Separation Agreement and General Release provided, in relevant part, a Non-Disclosure of Confidential Information provision and also required Defendant Isakson to immediately return all DFA documents and property.

91. Defendant Isakson began employment with Westrock in early 2024.

92. Defendant Isakson breached the Employee Non-Disclosure Agreement and the Separation Agreement and General Release by misappropriating DFA's Confidential Trade Secret Information, including DFA's documents and other property.

93. As a result of Defendant Isakson's breach, Plaintiff suffered damages as set forth herein.

WHEREFORE, Plaintiff prays the Court enter judgment in its favor and against Defendant Isakson; that the Court enjoin Defendant Isakson from her use of DFA's Confidential Trade Secret Information and that all Confidential Trade Secret Information be returned, including

16

information incorporated into Westrock's business; that the Court award actual damages in an amount that is fair and reasonable for all damages sustained as a result of their misappropriation of trade secrets, awarding punitive damages, awarding pre-judgment and post-judgment interest at the highest lawful rate, awarding Plaintiff its reasonable attorneys' fees, costs, and expenses incurred herein, and for such other and further relief as the court deems just and proper under the circumstances.

## COUNT VII – BREACH OF CONTRACT
## (AGAINST DEFENDANT BRIAN IZDEPSKI)

94. Plaintiff restates and realleges each and every allegation set forth in the preceding paragraphs as if fully set forth herein.

95. Defendant Izdepski began his employment with DFA on July 12, 2010.

96. On November 1, 2023, Defendant Izdepski was notified that his employment with DFA would be terminated due to a reduction in force.

97. On the same day, Defendant Izdepski downloaded DFA's Confidential Trade Secret Information.

98. November 10, 2023, was Defendant Izdepski's last day of employment with DFA.

99. Defendant Izdepski executed a Separation Agreement and General Release on November 15, 2023. A redacted copy is attached hereto as Exhibit J.

100. Separation Agreement and General Release provided, in relevant part, a Non-Disclosure of Confidential Information provision and also required Defendant Izdepski to immediately return all DFA documents and property.

101. Defendant Izdepski began employment with Westrock in early 2024.

102. Defendant Izdepski breached the Employee Non-Disclosure Agreement and the Separation Agreement and General Release by misappropriating DFA's Confidential Trade Secret Information, including DFA's documents and other property.

103. As a result of Defendant Izdepski's breach, Plaintiff suffered damages as set forth herein.

WHEREFORE, Plaintiff prays the Court enter judgment in its favor and against Defendant Izdepski; that the Court enjoin Defendant Izdepski from his use of DFA's Confidential Trade Secret Information and that all Confidential Trade Secret Information be returned, including information incorporated into Westrock's business; that the Court award actual damages in an amount that is fair and reasonable for all damages sustained as a result of their misappropriation of trade secrets, awarding punitive damages, awarding pre-judgment and post-judgment interest at the highest lawful rate, awarding Plaintiff its reasonable attorney's fees, costs, and expenses incurred herein, and for such other and further relief as the court deems just and proper under the circumstances.

### COUNT VIII – PIERCING THE CORPORATE VEIL
### (AGAINST DEFENDANT WESTROCK COFFEE)

104. Plaintiff restates and realleges each and every allegation set forth in the preceding paragraphs as if fully set forth in.

105. WBC is a wholly owned subsidiary of Westrock Coffee.

106. At all relevant times, Westrock Coffee exercised complete domination and control over WBC with respect to policy, operations, and decision-making.

107. WBC lacks a separate and independent corporate identity in that WBC and Westrock Coffee share common managers, officers, employees, and facilities, and operate as a single business enterprise.

108. Westrock Coffee holds out the operations of WBC—including the manufacturing and production at the Conway facility—as its own through public-facing materials and internal communications.

109. Adherence to the corporate form would sanction fraud and promote injustice by allowing Westrock Coffee to shield itself from liability for the wrongful acts committed through WBC.

110. Accordingly, the corporate veil between Westrock Coffee and WBC should be pierced, and Westrock Coffee should be held jointly and severally liable for the conduct of WBC.

WHEREFORE, Plaintiff prays the Court enter judgment in its favor and against Defendants, jointly and severally; that the Court enjoin Defendants from its use of DFA's Confidential Trade Secret Information and that all Confidential Trade Secret Information be returned, including information incorporated into Westrock's business; that the Court award actual damages in an amount that is fair and reasonable for all damages sustained as a result of their misappropriation of trade secrets, awarding punitive damages, awarding pre-judgment and post-judgment interest at the highest lawful rate, awarding Plaintiff its reasonable attorneys' fees, costs, and expenses incurred herein, and for such other and further relief as the court deems just and proper under the circumstances.

HUSCH BLACKWELL LLP

/s/ *Laura C. Robinson*
Laura C. Robinson, #2014186

3810 E. Sunshine Street, Suite 300
Springfield, MO 65809
T: (417) 268-4000
F: (417) 268-4040
laura.robinson@huschblackwell.com

/s/ *Bryan O. Wade*
*Pro Hac Vice*
Bryan O. Wade, Mo. Bar No. 41939
3810 E. Sunshine St., Suite 300
Springfield, MO 65809
Office: (417) 268-4000
Fax No: (417) 268-4040
Bryan.wade@huschblackwell.com

*Attorneys for Plaintiffs*

## CERTIFICATE OF SERVICE

The undersigned hereby certifies that the foregoing document was served this 14th day of July, 2025, on all counsel of record by operation of the court's eFiling system.

*/s/ Bryan Wade*