IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF ARKANSAS
CENTRAL DIVISION

DAIRY FARMERS OF AMERICA, INC.,

     Plaintiff,

v.

WESTROCK COFFEE COMPANY, et al.

     Defendants.

Case No. 4:25-cv-000662-JM

## BRIEF IN SUPPORT OF WESTROCK DEFENDANTS' MOTION TO COMPEL ADEQUATE DISCLOSURE OF TRADE SECRETS

### I.  INTRODUCTION

DFA alleges that Westrock misappropriated its trade secrets and induced, solicited, and/or recruited the former DFA employees to obtain the trade secrets prior to their joining Westrock. (Doc. 107, ¶ 28.) Having initiated a trade secret misappropriation action against Westrock and others, it is DFA's burden to establish what trade secrets allegedly are at issue and describe them with sufficient particularity to allow the defendants to mount a defense.

DFA has wholly failed to meet that burden here. Despite claiming to have conducted an internal investigation to identify which documents allegedly were misappropriated, and receiving the flash drives purportedly used to by the former DFA employees to transmit the trade secrets, DFA has not identified the trade secrets at issue with any modicum of specificity. Instead, it has provided little more than generic categories of documents and information broad enough to encompass every facet of Westrock's business. This is unacceptable.

It has been more than 527 days since DFA obtained information indicating what exact documents allegedly were misappropriated via its internal investigation and the flash drives. There

is no excuse for DFA's refusal to review that information and identify the trade secrets at issue, or (at a minimum) to identify what trade secrets are contained on the flash drives.

Because DFA refuses to adequately identify what trade secrets are at issue, Westrock cannot mount a defense nor can it determine the true scope of discovery in this litigation. Accordingly, the Court should enter an order compelling DFA to disclose its trade secrets with "reasonable particularity"[1] within 14 days of the order, specifically (1) ordering DFA to provide full and complete responses to Interrogatory Nos. 1, 2, and 3, and identify which documents on the flash drives are confidential/trade secret as promised in response to Interrogatory No. 16; (2) finding that trade secret discovery from Westrock need not be had until said trade secrets are particularly identified; and (3) awarding Westrock its attorneys' fees and all other relief available under Rule 37 of the Federal Rules of Civil Procedure.

## II. ARGUMENT

It is DFA's burden to establish what trade secrets are at issue in this litigation and it must "clearly identify" those trade secrets. *Tyson Foods, Inc. v. ConAgra, Inc.*, 349 Ark. 469, 79 S.W.3d 326, 334 (2002) (under Arkansas law, it is "incumbent" on plaintiff to "clearly identify what information is consider[s] to be trade secret, as that is a legal status fixed by statute"); *Walmart Inc. v. Cuker Interactive, LLC,* 949 F.3d 1101, 1109 (8th Cir. 2020); *see also Del Monte Fresh Produce Co. v. Dole Food Co. Inc.*, 148 F. Supp. 2d 1322, 1325-26 (S.D. Fla. 2001) (plaintiff must describe with "reasonable particularity the trade secrets at issue"); *Porous Media Corp. v. Midland Brake Inc.*, 187 F.R.D. 598, 600 (D. Minn. 1999) ("Ordering the listing of trade secrets at the outset

---

[1] *DeRubeis v. Witten Technologies, Inc.*, 244 F.R.D. 676 (N. D. Ga. 2007), defined "reasonable particularity" "to mean that [counterclaim-plaintiff] must provide [counterclaim-defendant] with a sufficient description of the trade secrets it believes to be at issue in this case so that: (1) [counterclaim-defendants] are put on notice of the nature of [counterclaim-plaintiff's] claims; and (2) [counterclaim-defendants] can discern the relevancy of any requested discovery on [counterclaim-plaintiff's] trade secrets." *Id* at 681.

of the litigation is a common requirement. Failure to identify the trade secrets with sufficient specificity renders the Court powerless to enforce any trade secret claim.") (citations omitted). "[I]t is insufficient to describe the trade secrets by generic category…[the plaintiff] must identify the specific characteristics of each trade secret, such as a particular drawing, process, procedure or cost/pricing data." *Knights Armament Co. v. Optical Sys. Tech., Inc.*, 254 F.R.D. 463, 467 (M.D. Fla. 2008), *aff'd*, 254 F.R.D. 470 (M.D. Fla. 2008); *see also Wilbur-Ellis Co. LLC v. Gompert*, No. 8:21CV340, 2022 WL 17736773, at \*5 (D. Neb. Dec. 16, 2022) (generic categories of trade secrets with generic definitions insufficient), *aff'd*, 2023 WL 375125 (D. Neb. Jan. 24, 2023).

DFA has failed to "clearly identify" the trade secrets at issue or identify them with "reasonable particularity." Instead, it has provided generic categories that would encompass every single document or piece of data within DFA or Westrock's business. For example, according to DFA, trade secrets include:

- call lists
- contracts
- customer data
- memoranda, summaries, notes, records, reports, and analyses
- information technology processes and practices
- administrator identities
- employee lists and contact information
- member records, lists contact information[2]
- sketches,
- plans
- drawings
- equipment
- supplier and source pricing
- business processes and practices
- accounting and financial practices
- technology

---

[2] DFA is a national milk marketing cooperative. It is unclear what "member records, lists, contact information, payroll, test results, farm surveys, performance dashboards, and other confidential member data" relates to, but Westrock suspects that DFA is referring to the farmer owners of DFA. There is no indication that DFA member data is at issue in this litigation or that Westrock would have any use for such information, given that Westrock is not a milk cooperative. The inclusion of these descriptions in response to Interrogatory Nos. 1-3 highlights that DFA has not made a reasonable effort to identify the trade secrets at issue in this litigation.

(**Exhibit E**, Discovery Responses, pp. 3-5.)

These generic categories are inadequate and do not identify the trade secrets at issue. For example, not all "memoranda, summaries, notes, records, reports, and analyses" prepared by DFA are trade secret nor are all trade secret "memoranda, summaries, notes, records, reports, and analyses" at issue in this litigation. DFA must identify what memoranda it contends are trade secrets at issue in this litigation and why. The same is true of "call lists." A list of the calls DFA's receptionist makes during the day is not trade secret. What call list does DFA contend is a trade secret, and why? The same is true of "contracts," "customer data," "sketches," "plans," "drawings," "equipment," "supplier and source pricing," business/IT/accounting "practices," and "technology." As noted in *Knights Armament*, DFA must identify the specific characteristics of each of these categories that make them trade secret – *i.e.*, what contract, sketch, plan, drawing, equipment, pricing, business practice, accounting practice, and technology is trade secret. *See* 254 F.R.D. at 467. Generic lists like what DFA provided are unacceptable. *See id.*

The remaining categories (administrator identities, and employee lists and contact information) cannot be considered trade secrets without further specificity. Information that is "readily ascertainable" does not qualify as a trade secret. Ark. Code Ann. § 4–75–601(4)(A); *Vigoro Indus., Inc. v. Crisp*, 82 F.3d 785, 789–90 (8th Cir. 1996) (farm customers and customer data are not trade secret because the farmers "could be easily discovered" and farmers readily share their customer data). Westrock can identify DFA's administrators and employees through online searches, namely LinkedIn. (*See* **Exhibit J**, LinkedIn Profiles, obtained March 29, 2026.) There is no indication that DFA employees are prohibited from disclosing their employer and title or providing their contact information to whomever they choose; thus, this information cannot be a DFA trade secret.

DFA's Answers also include catchall categories whereby DFA contends that the trade secrets at issue include "other information that is not publicly available," "material derived in whole or in part from Confidential Information," and any "combination or compilation of the confidential, proprietary, and other information taken, acquired, disclosed, or used by Defendants and that qualifies as a protectable trade secret." These are impermissible because Westrock has no way of determining what information DFA believes might fit into one of these catchall categories. In short, the generic categories of information and these catchalls encompass every facet of Westrock's business and would permit DFA to engage in an impermissible fishing expedition, when there is no indication that such broad and unfettered discovery is warranted.

Admittedly, it can be difficult for a plaintiff to describe the trade secrets at issue when it is not certain what information was taken. For a good discussion of the competing policies relating to trade secret discovery and the approaches taken by various courts, *see DeRubeis v. Witten Technologies, Inc*., 244 F.R.D. 676 (N. D. Ga. 2007). But the difficulties that plague some trade secret plaintiffs do not apply to DFA. DFA conducted an internal investigation to identify misappropriated documents. (**Exhibit B**, Letter from A. Coughlin to J. Isakson, *et al*., Sept. 10, 2024, pp. 6-20.) Westrock then provided DFA with the very external drives that DFA contends were used in the misappropriation. (**Exhibit C**, Letter from M. McKinney to A. Coughlin, Oct. 22, 2024.) DFA has had those drives and the results of its internal investigation for more than 527 days. It is specious for DFA to contend that it cannot identify the trade secrets at issue when it literally has the means of identifying those materials in its possession.[3]

---

[3] The suggestion that DFA may not know the full scope of the purported misappropriation is immaterial. Parties are expected to supplement their responses as discovery progresses, and the possibility of supplementation is not a basis to withhold information that currently is in the party's possession.

Beyond Arkansas courts' requirement for a trade secret plaintiff to "clearly identify" its trade secrets, courts routinely require trade secret plaintiffs to identify the trade secrets at issue with "reasonable particularity" prior to receiving discovery from the defendant when they know what materials were misappropriated. *See DeRubeis*, 244 F.R.D. 676, 680-81 (citing cases); *Hull Partners, LLC v. Clean Fuels All. Am.*, No. 4:23-CV-00172-SHL-HCA, 2024 WL 6991113, at *2 (S. D. Iowa June 3, 2024); *Wilbur-Ellis Co., LLC v. Cody Downing*, No. 4:21-CV-00332-RGE-HCA, 2023 WL 12245758, at *4 (S. D. Iowa Sept. 27, 2023); *Gompert*, 2022 WL 17736773, at *5. This approach – requiring disclosure of the trade secrets with "reasonable particularity" before the plaintiff can receive discovery from the defendant – is appropriate in such cases, and here, because: (1) DFA knows what was taken, meaning that DFA can identify the trade secrets in those materials without fear that disclosure will expose undisclosed or non-misappropriated materials; (2) it "prevent[s] the needless disclosure of [defendant's] confidential information in the event that [plaintiff] is engaged in a fishing expedition or retaliating."; (3) it places appropriate boundaries on trade secret discovery; (4) it allows Defendants to begin to mount a defense; and (5) with a protective order in place, DFA is not risking the confidentiality of the disclosed information. *DeRubeis,* 244 F.R.D. at 681–82. The factors supporting adequate disclosure of trade secrets as a prerequisite to discovery also translate into policy considerations supporting this approach. *See Switch Commcn's Grp., v. Ballard,* No. 2:11-cv-00285-KJD-GWF, 2012 WL 2342929, at *4 (D. Nev. June 19, 2012) (summarizing *DeRubeis*, 244 F.R.D. at 681).

Here, DFA has had 527 days to determine what was misappropriated. There are no facts indicating that it cannot identify what has been misappropriate – it simply will not. Given the facts at issue here, the policy considerations, and the burden on a trade secret plaintiff, DFA's refusal is wholly unjustified and improper.

Brief

Failure to adequately respond to interrogatories under Rule 33 or to produce documents in response to a request for production under Rule 34 subjects the party to motion to compel. Fed. R. Civ. P. 37(a)(1). In addition, the Court has discretion under Rule 37 "to impose appropriate sanctions for the failure to make discovery." *Laclede Gas Co. v. G. W. Warnecke Corp.*, 604 F.2d 561, 565 (8th Cir. 1979); *Riley v. El Dorado Sch. Board*, No. 1:14-CV-1016, 2015 WL 1564787 (W.D. Ark. Apr. 8, 2015). The Court should exercise its authority pursuant to Rule 37 and enter an order compelling DFA to disclose its trade secrets with "reasonable particularity" within 14 days of the order, specifically ordering DFA to provide full and complete responses to Interrogatory Nos. 1, 2, and 3, and identify which documents on the flash drives are confidential/trade secret as promised in response to Interrogatory No. 16, find that trade secret discovery from Westrock need not be had until said trade secrets are particularly identified, and directing DFA to pay Westrock's attorneys' fees and costs associated with bringing this motion.

### III. CONCLUSION

For the reasons stated above, Defendants Westrock Coffee Company and Westrock Beverage Company, LLC, respectfully request that the Court enter an order: (1) compelling DFA to disclose its trade secrets with "reasonable particularity" within 14 days of the order, specifically ordering DFA to provide full and complete responses to Interrogatory Nos. 1, 2, and 3, and identify which documents on the flash drives are confidential/trade secret as promised in response to Interrogatory No. 16; (2) finding that trade secret discovery from Westrock need not be had until said trade secrets are particularly identified, (3) awarding Westrock its attorneys' fees and costs associated with bringing this motion; and (4) granting all other just and proper relief.

April 1, 2026

Respectfully submitted,

| | |
|---|---|
| Jonathan M. Moses (admitted *pro hac vice*) | **KUTAK ROCK LLP** |
| Wachtell, Lipton, Rosen & Katz | Andrew King, Ark. Bar No. 2007176 |
| 51 West 52nd Street | 124 W. Capitol Avenue, Suite 2000 |
| New York, NY 10019 | Little Rock, Arkansas 72201 |
| JMMoses@wlrk.com | 501-975-3000 telephone |
| (212) 403-1388 telephone | 501-975-3001 fax |
| | andrew.king@kutakrock.com |

*/s/ Anna M. Berman*
Anna M. Berman, MO# 61637
(admitted *pro hac vice*)
anna.berman@kutakrock.com
2405 Grand Boulevard, Suite 600
Kansas City, MO 64108-2519
Telephone:    (816) 960-0090
Facsimile:    (816) 960-0041

*Attorneys for Defendants Westrock Coffee Company and Westrock Beverage Company, LLC*

## CERTIFICATE OF SERVICE

The undersigned hereby certifies that a true and correct copy of the foregoing has been served via the court's electronic filing system upon all counsel of record on this 1st day of April, 2026.

*/s/ Anna M. Berman*
An Attorney for Defendants