# EXHIBIT 1

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF ARKANSAS
CENTRAL DIVISION

DAIRY FARMERS OF AMERICA, INC.,

    Plaintiff,

    v.                       Case No. 4:25-cv-00662

WESTROCK COFFEE COMPANY, et al.,

    Defendants.

**DAIRY FARMERS OF AMERICA, INC.'S OBJECTIONS AND ANSWERS TO
DEFENDANT WESTROCK COFFEE COMPANY'S
<u>FIRST SET OF INTERROGATORIES TO PLAINTIFF</u>**

Pursuant to Federal Rules of Civil Procedure 26 and 33, Plaintiff, Dairy Farmers of America, Inc. ("DFA") hereby submits its objections and responses to Defendant, Westrock Coffee Company's ("Westrock") First Set of Interrogatories to Plaintiff. Discovery is ongoing, and DFA has not yet completed its investigation related to this Action. DFA's responses are based on its knowledge, information, and belief at this time. Pursuant to Federal Rule of Civil Procedure 26(e), DFA will supplement, correct, or revise its responses and objections based upon any information, evidence, or documentation, which hereinafter may be discovered.

**<u>INSTRUCTIONS and DEFINITIONS</u>**

(a)    In responding to these Interrogatories, you are required to furnish all information that is available to you, or that is under your control, including information in the possession of your attorneys, accountants, advisors, or other persons directly or indirectly employed by, retained by, or otherwise connected with you or your attorneys or anyone else otherwise subject to your control.

1

(b)      With respect to any Interrogatory to which you object based on a claim of privilege, provide a privilege log that includes sufficient information regarding the withheld information to allow Westrock and the Court to assess the privilege claimed.

**Objection: DFA objects to this instruction as it seeks to impose on DFA a burden greater than that required by Fed. R. Civ. P. 26. As outlined in the Parties' Stipulated Electronically Stored Information (ESI) Protocol, DFA will produce an appropriate summary metadata log for any documents withheld on the basis of privilege, work product, or other privileges or protections consistent with Rule 26 within 60 days of its final production, with the exception of the following documents or communications, which will not be included in a privilege log: (a) communications involving outside counsel for the Parties to this Action created after September 10, 2024; (b) information generated before or after the relevant discovery period as agreed to by the Parties or ordered by the Court; (c) communications with non-testifying experts in connection with this Action or testifying experts in connection with this Action; and (d) any privileged materials or work product created by or specifically at the direction of a Party's outside counsel, an agent of outside counsel other than the Party, and any non-testifying experts in connection with the Action.**

(c)      These Interrogatories are continuing and require that you provide all responsive information whenever you obtain or become aware of it, even if it is not in your possession or available to you on the date you first answer.

**Objection:      DFA objects to this instruction to the extent it seeks to impose on DFA a burden greater than that required by the Federal Rules of Civil Procedure and the Parties' ESI Protocol. DFA will timely supplement its responses consistent with its obligations under the Federal Rules of Civil Procedure and any other applicable rule, obligation, or order from the Court.**

(d)      "Individual Defendants" refers to Defendants Julia Isakson, Brian Izdepski, Rebecca Huckabay, Cedric Smith, Dustin Slagle, and Patricia Bethurem.

(e)      "Complaint" refers to the Second Amended Complaint filed in this action on July 14, 2025.

(f)      "Person" means any natural person or individual, or any firm, partnership (general or limited), limited liability company, proprietorship, corporation, unincorporated association, trust, joint venture, or any other legal or governmental entity, organization, or body of any type

2

whatsoever, as well as all agents, officers, directors, boards, committees, subcommittees, employees, consultants, representatives, or instrumentalities thereof.

**Objection:    DFA objects to this definition as vague and confusing and overly broad, including to the extent it defines person to mean any consultant, representative, or instrumentality of any natural person or individual, entity, or "body of any type whatsoever." DFA will apply the ordinary definition of "person," and produce nonprivileged, relevant, and responsive information that falls within the scope of Rule 26(b) and is within DFA's knowledge, custody, possession, or control.**

**INTERROGATORIES**

1.      Identify with specificity all "Confidential Information" that you allege is at issue in this litigation.

**ANSWER:    DFA objects to this Interrogatory as a premature contention interrogatory to the extent it seeks a complete accounting of all information DFA considers "Confidential" and/or alleges is at issue in this litigation. This is particularly true given that the parties are in the early stages of discovery and the full extent Confidential Information taken from DFA and/or improperly used by Defendants is information that is not in DFA's possession, custody, or control; is known only to Defendants and/or nonparties; and/or that is subject of and will be explored in the course of discovery. DFA further objects to this Interrogatory to the extent it appears to request detailed descriptions of the very information DFA seeks to protect through this litigation and that is not otherwise publicly available.**

**DFA contends that Defendants improperly took, disclosed, and/or used DFA's confidential and proprietary information, including certain Confidential Trade Secret Information, such as that identified in Paragraphs 26 and 27 of the Complaint. The confidential information includes, but is not limited to: customer lists, call lists, contracts, and other confidential customer data; memoranda, summaries, notes, records, reports, and analyses; information technology processes, practices, security standards and designs, security protocols, administrator identities, and passwords; employee records, lists, contact information, and other confidential employee data (including payroll and personnel records),; member records, lists, contact information, payroll, test results, farm surveys, performance dashboards, and other confidential member data, other information that is not publicly available; and material derived in whole or in part from Confidential Information.**

2.      Identify with specificity all "Confidential Trade Secret Information" that you allege is at issue in this litigation.

**ANSWER:    DFA objects to this Interrogatory as a premature contention interrogatory to the extent it requests DFA identify "with specificity" all**

3

**"Confidential Trade Secret Information" DFA alleges is at issue in this litigation. This is particularly true given that the parties are in the early stages of discovery and the full extent of the Confidential Trade Secret Information taken from DFA and/or improperly disclosed or used by Defendants is information that is not in DFA's possession, custody, or control; is known only to Defendants and/or nonparties; and/or that is the subject of and will be explored in the course of discovery. DFA further objects to this Interrogatory to the extent it appears to request detailed descriptions of the very information DFA seeks to protect through this litigation and that is not otherwise publicly available.**

**DFA contends that Defendants improperly took, disclosed, and/or used DFA's confidential and proprietary information, including, certain Confidential Trade Secret Information, such as that identified in Paragraph 26 and 27 of the Complaint. The Confidential Trade Secret Information includes, but is not limited to: sketches, plans (including strategic plans and marketing plans), drawings, and other confidential research and development data; manufacturing processes and practices; equipment; equipment configurations, chemical and/or product formulas; and composition information for DFA's products, supplier pricing, costs, business processes and practices, and distribution methods, the documents and information identified in Paragraphs 26 and 27, and/or any combination or compilation of the confidential, proprietary, and other information taken, acquired, disclosed, or used by Defendants and that qualifies as a protectable trade secret**

3.      Identify which specificity the "confidential pricing information" that you allege is at issue in this litigation.

**ANSWER: DFA objects to this Interrogatory as a premature contention interrogatory to the extent it requests DFA identify with "specificity" all "confidential pricing information" DFA alleges is at issue in this litigation. This is particularly true given that the parties are in the early stages of discovery and the full extent of the confidential pricing information taken from DFA and/or improperly disclosed or used by Defendants is information that is not in DFA's possession, custody, or control; is known only to Defendants and/or nonparties; and/or is the subject of ongoing discovery. DFA further objects to this Interrogatory to the extent it appears to request detailed descriptions of the very information DFA seeks to protect through this litigation and that is not otherwise publicly available.**

**DFA contends that Defendants improperly took, disclosed, and/or used DFA's confidential, proprietary, and trade secret information, including, but not limited to: supplier and source pricing, as well as other financial information and data related**

4

**to DFA costs, business processes and practices, distribution methods, audit reports, accounting and financial practices, and technology.**

4.     Please describe with specificity how the "Confidential Information," "Confidential Trade Secret Information," and "confidential pricing information" identified in your Answers to Interrogatory Nos. 1, 2, and 3 were developed. In your Answer, please state:

a.   When each piece of "Confidential Information", "Confidential Trade Secret Information", and "confidential pricing information" was developed;

b.   How it was developed;

c.   By whom; and

d.   The cost incurred by DFA in said development.

**<u>ANSWER</u>:   DFA objects to this Interrogatory as a premature contention interrogatory to the extent it requests DFA identify "with specificity" how various confidential information was "developed." This is particularly true, as noted above, given that the parties are in the early stages of discovery and the full extent of the information taken from DFA and/or improperly disclosed or used by Defendants is information that is not in DFA's possession, custody, or control; is known only to Defendants and/or nonparties; and/or that is the subject of ongoing discovery.  DFA further objects to this request as overly broad, unduly burdensome, and vague and ambiguous, including because it is unlimited in time and seeks information regarding "each piece" of confidential information and how and when that information "was developed", by "whom it was developed," and the costs incurred by DFA in the "development" of this information. A description of how various confidential information – the full extent of which Defendants improperly took from DFA is still unknown – including when it was developed, by whom it was developed, and the costs incurred by DFA at any point in time in connection with that information is not relevant to the claims or defenses at issue, risks disclosing the very information DFA seeks to protect through this litigation, and is not proportional to the needs of the case, including because the burden of the burden of identifying this information outweighs any potential benefit. All Confidential Information, Confidential Trade Secret Information, Confidential Pricing Information was developed internally by DFA and its employees. DFA employees acknowledge that all original works prepared by the employee (solely or jointly with others) within the scope of their employment are considered "works for hire" and owned by DFA. Throughout the development stage, access to this type of information is limited by role-based permissions, physical**

5

**security (such as badge access to labs or server rooms), digital encryption, and regular employee training on confidentiality and data protection.**

5.      Identify any "Confidential Information," "Confidential Trade Secret Information," and "confidential pricing information," as identified in your Answers to Interrogatory Nos. 1, 2, and 3, that was developed, in whole or in part, by the joint venture referenced in Paragraph 16 of the Complaint.  In your Answer, please state, for each such piece of information:

**ANSWER: DFA objects to this Interrogatory as a premature contention interrogatory to the extent it requests DFA identify various confidential information taken by Defendants, the full extent of which is not within DFA's knowledge, possession, custody, or control, and that is the subject of ongoing discovery, as set forth above. DFA likewise objects to this Interrogatory to the extent it purports to request DFA to identify and describe the very confidential information DFA seeks to protect through this litigation and that is not publicly known or available. DFA further objects to this request as vague and ambiguous to the extent it asks DFA to identify various confidential information that was "developed in whole or in part, by the joint venture referenced in Paragraph 16." In Paragraph 16, DFA notes that it entered into confidential packing agreements with a joint venture to manufacture, market, sell, and distribute ready-to-drink coffee and energy beverages. These agreements include non-disclosure and confidentiality provisions with entities that are not parties to the litigation. Accordingly, DFA objects to this Interrogatory to the extent it seeks information subject to non-disclosure or confidentiality agreements with third parties, including because such disclosure would violate DFA's contractual obligations and the privacy and confidentiality interests of third parties. To the extent discovery reveals that Defendants improperly took, disclosed, and/or used confidential information that was developed in whole or in part by the joint venture referenced in Paragraph 16 and that is relevant to the claims and defenses at issue, DFA will consult with the joint venture to request authorization to identify any responsive information and after providing any and all required notice to third parties and for an opportunity for them to object to such disclosure as appropriate.**

6.      For the information identified in your answer to Interrogatory No. 5, identify all provisions of the Joint Venture Agreements, identified in Paragraph 16 of the Complaint, governing the confidentiality of said information.

**ANSWER:   DFA incorporates its objections to Interrogatory 5 above, including that DFA objects to this Interrogatory to the extent it seeks information related to a confidential agreement with a third party, which is not relevant to the claims or defenses at issue. As set forth above, to the extent discovery reveals that Defendants improperly took, disclosed, and/or used confidential information that was developed in whole or in part by the Joint Venture referenced in Paragraph 16 and that is**

6

**relevant to the claims and defenses at issue, DFA will consult with the Joint Venture to request authorization to identify the applicable confidentiality provisions in the Joint Venture Agreement and to provide notice to the third party, including so that it has an opportunity to object to such disclosure as appropriate.**

7.    For the information identified in your answer to Interrogatory No. 5, identify all provisions of the Joint Venture Agreements, identified in Paragraph 16 of the Complaint, governing the ability of the parties to the Joint Venture Agreements to disclose said information.

**ANSWER:    DFA incorporates its objections Interrogatory 5 above, including that DFA objects to this Interrogatory to the extent it seeks information related to a confidential agreement with a third party, which is not relevant to the claims or defenses at issue. As set forth above, to the extent discovery reveals that Defendants improperly took, disclosed, and/or used confidential information that was developed in whole or in part by the joint venture referenced in Paragraph 16 and that is relevant to the claims and defenses at issue, DFA will consult with the joint venture to request authorization to identify the applicable confidentiality provisions in the Joint Venture Agreement and to provide notice to the third party, including so that it has an opportunity to object to such disclosure as appropriate.**

8.    Identify all locations where the "Confidential Information," "Confidential Trade Secret Information," and "confidential pricing information" identified in your Answers to Interrogatory Nos. 1, 2, and 3 is located within DFA, including the names and titles of all those who have access to said locations.

**ANSWER: DFA objects to this Interrogatory as a premature contention interrogatory to the extent it requests DFA identify all locations where the confidential information identified in DFA's Answers to Interrogatory Nos. 1-3 is located, including the names and titles of all those that have access to those locations. As set forth above, the parties are in the early stages of discovery and the full extent of the information taken from DFA and/or improperly disclosed or used by Defendants is information that is not in DFA's possession, custody, or control; is known only to Defendants and/or nonparties; and/or that is the subject of ongoing discovery. DFA further objects to this Interrogatory because it is overly broad and unduly burdensome, it is unlimited in time it seeks information, including the names and titles, of all individuals who have ever had access to the requested information at any point in time. As set forth above, the information at issue related to retort solutions includes at least the following: pricing information and safety and compliance documentation and information. This information is stored behind multiple firewalls, with approximately 5-6 individuals having authority and login credentialing to access the information, depending on the nature of the information and the time period at issue. Other Confidential Information is stored on company**

**servers and accessible by DFA employees. All employees are required to sign a Non-Disclosure Agreement that acknowledges this Confidential Information is DFA property and should not be disclosed.**

9.      Describe all measures taken by DFA to maintain the secrecy of the "Confidential Information," "Confidential Trade Secret Information," and "confidential pricing information" identified in your Answers to Interrogatory Nos. 1, 2, and 3.

**ANSWER:    DFA objects to this Interrogatory as it seeks information protected by the attorney-client privilege and/or work product doctrine. DFA further objects to this Interrogatory as overly broad and unduly burdensome because it is unlimited in time and scope and seeks information related to every measure or action, formal or informal, taken by DFA to maintain the secrecy of various Confidential Information, including proprietary trade secrets and pricing information. "[A]ll measures" taken by DFA to maintain secrecy is vague and ambiguous and could be read to encompass a multitude of scenarios related to the daily tasks and assignments necessary to carry out operations.  DFA further objects to this Interrogatory as a premature contention interrogatory to the extent it requests DFA describe all measures to maintain the secrecy of the various information identified in DFA's Answers to Interrogatory Nos. 1-3. As set forth above, the parties are in the early stages of discovery and the full extent of the information taken from DFA and/or improperly disclosed or used by Defendants is information that is not in DFA's possession, custody, or control; is known only to Defendants and/or nonparties; and/or that is the subject of ongoing discovery.**

**Among other measures, DFA takes the following actions to maintain the secrecy of its Confidential and/or Trade Secret Information. DFA requires every employee to sign an Employee Non-Disclosure, Ethics, and Conflict of Interest Agreement as an initial measure to maintain the secrecy of Confidential Information, Confidential Trade Secret Information, and Confidential Pricing Information. DFA's Retort Solutions group also has multiple layers of security access for trade secret and proprietary information. Only certain users, based on their role at DFA, are granted access and credentialing to access trade secret information.**

10.      Identify all persons responsible for monitoring and enforcing the measures identified in your Answer to Interrogatory No. 9. In your Answer, please provide each individual's name, title, and contact information.

**ANSWER:    DFA objects to this Interrogatory as overly broad and unduly burdensome because it is unlimited in time and seeks information of all persons who in any way monitored or enforced security measures for any Confidential, Trade Secret, or pricing information. DFA further objects to this Interrogatory becausehe identity of every person at any point in time, including their title and contact**

8

**information, who enforced the measures to protect the secrecy of DFA's Confidential and Trade Secret Information is not relevant to the claims and defenses in this action. DFA further objects to this Interrogatory to the extent it seeks information protected by the attorney-client privilege and/or work product doctrine. Additionally, Defendants' request for all "measures" taken by DFA to maintain secrecy is vague and ambiguous and could be read to encompass a multitude of scenarios related to the daily tasks and assignments necessary to carry out daily tasks and operations, including, by way of example, DFA's requirement that every employee sign an Employee Non-Disclosure, Ethics, and Conflict of Interest Agreement, which requires the employee to agree and acknowledge that the employee will maintain DFA information in a confidential manner. Thus, every employee, including former employees, has a responsibility to maintain the secrecy and confidentiality of DFA information.  The burden and expense of identifying every DFA employee at any point in time responsible for monitoring and enforcing security measures outweighs any potential benefit and is not proportional to the needs of the case. DFA is willing to meet and confer regarding the scope of this Interrogatory.**

11.     Identify each act by Westrock that you contend constitutes improper acquisition, disclosure, or use of the "Confidential Information," "Confidential Trade Secret Information," and "confidential pricing information" identified in your Answers to Interrogatory Nos. 1, 2, and 3. In your Answer, please include:

    a. The individual alleged to have committed each act;

    b. The date of each act;

    c. The specific piece of "Confidential Information", "Confidential Trade Secret Information", and "confidential pricing information" involved; and

    d. A description of how such acquisition, disclosure, or use harmed DFA.

**<u>ANSWER:</u> DFA objects to this Interrogatory, including its discrete subparts, as compound and violative of Federal Rule of Civil Procedure 33(a)(1) because it contains multiple distinct questions under the umbrella of a single interrogatory in an apparent attempt to evade Rule 33's numerical limits. DFA is willing to meet and confer with Defendants regarding the scope of this Interrogatory. DFA further objects to this Interrogatory as a premature contention interrogatory to the extent it requests DFA identify each and every act by Westrock that DFA constitutes an improper acquisition, disclosure, or use of DFA's Confidential and/or Trade Secret Information, including the individual alleged to have committed such act, the date of each act, the specific information at issue, and a description of how such acquisition, disclosure, or use harmed DFA. As set forth above, the parties are in the early stages of discovery and the full extent of the information taken from DFA and/or improperly disclosed or used by Defendants and other acts related to Defendants' acquisition,**

disclosure, and use of DFA's information is information that is not in DFA's possession, custody, or control; is known only to Defendants and/or nonparties; and/or that is the subject of ongoing discovery. To be sure, the Individual Defendants and Westrock – not DFA – are the best source for this information. And DFA has requested this information from Defendants. Further, in addition to constituting a separate and distinct interrogatory, subpart (d) seeks information that is properly the subject of expert discovery, including as it relates to the actual losses and/or unjust enrichment caused by Defendants' actions. DFA will disclose such information consistent with its obligations under the Federal Rules of Civil Procedure and the Scheduling Order entered in this matter. Pursuant to DFA's Non-Disclosure, Ethics, and Conflict of Interest Agreements, DFA employees, including the Individual Defendants, agreed: (1) they would not disclose DFA's Confidential Information and/or trade secrets; (2) all inventions and Confidential Information and trade secrets they developed while at DFA are DFA's property; and (3) they would return all DFA documents containing Confidential Information and/or Trade Secrets to DFA upon their departure from DFA. The Individual Defendants violated their respective agreements and improperly acquired, disclosed, and/or used DFA's confidential and other information by retaining DFA Confidential Information upon termination, by relying on that information at Westrock and for Westrock's benefit, and/or by disseminating that information to or otherwise sharing that information with Westrock. Westrock knowingly acquired, relied on, and used DFA's confidential information through improper means. In fact, Westrock was directly informed of Westrock's and its employees' possession of DFA's trade secrets and other confidential information by the Whistleblower and knew the information came from former DFA employees who had a duty to maintain its secrecy. Additionally, Westrock actively recruited DFA employees for its Conway facility, at times using former DFA employees to do so, fully aware that these employees had access to DFA's confidential information at the time employment discussions began.

Upon information and belief, these recruitment efforts were designed and intended to provide Westrock with additional access to DFA's confidential and trade secret information.

12.    Identify all persons with knowledge of each item of "Confidential Information", "Confidential Trade Secret Information", and "confidential pricing information" identified in your Answers to Interrogatory Nos. 1, 2, and 3, whether said individual is a DFA employee, contractor, or consultant, or third party.

**ANSWER:    DFA objects to this Interrogatory as a premature contention interrogatory to the extent it requests DFA identify each and every person "with knowledge" of each item of Confidential or Trade Secret Information identified in DFA's Answers to Interrogatory Nos. 1-3. As set forth above, the parties are in the early stages of discovery and the full extent of the information taken from DFA and/or improperly disclosed or used by Defendants is information that is not in DFA's**

10

possession, custody, or control; is known only to Defendants and/or nonparties; and/or that is the subject of ongoing discovery. DFA further objects to Interrogatory No. 12 as overly broad and unduly burdensome because it is unlimited in time and contains no meaningful subject matter limitations seeking the identity of every person, at any point in time, regardless of whether that person is a DFA employee or contractor, consultant, or third party, with any knowledge whatsoever relating to any DFA Confidential or Trade Secret Information ultimately taken by and/or improperly used or disclosed by Defendants. The phrase "with knowledge" is vague and ambiguous and could be read to encompass a multitude of extraordinarily broad and irrelevant scenarios, including mere knowledge the documents exist, knowledge of the document contents, and/or knowledge the information is confidential. Information regarding any knowledge whatsoever by any person at any point in time related to DFA's Confidential and Trade Secret Information, as identified in its responses to Interrogatory Nos. 1-3 is not relevant to the claims and defenses, nor is it proportional to the needs of the case. The burden and expense of identifying the proposed discovery outweighs the potential benefit, if any under Rule 26's proportionality factors. DFA identifies the following current and former DFA employees as having knowledge regarding the proprietary and confidential nature of the documents taken by Individual Defendants.

1. **Individual Defendants**

2. **Haley Olenski**

3. **CJ McKinney**

4. **Paul Gothard**

5. **Ethan Pridemore**

6. **Cathy Hicks**

7. **Dalton Harris**

8. **Preston Green**

13. Identify the "whistleblower" referenced in Paragraphs 25-31 of the Complaint.

**ANSWER:** ████████████████████
████████████████████

14.    Identify all competitors who make products made by the manufacturing facilities described in Paragraph 15 of the Complaint, the competitive product(s) made by each competitor, and United States market share for each competitor, including but not limited to retort operations and shelf-stable, ready-to-drink coffee products.

> **ANSWER:**    DFA objects to this Interrogatory as vague, overly broad, and unduly burdensome, including because it is unlimited in time and contains no meaningful subject matter limitations. As written, this Interrogatory requests DFA identify every competitor who makes, or has ever made, a product that DFA's manufacturing facilities in Greene County and Texas County makes or has ever made over an unlimited period of time, including each competitor's market share nationwide. DFA further objects because such information is not relevant to the claims or defenses at issue, nor is it proportional to the needs of the case under Rule 26(b). DFA further objects to this Interrogatory to the extent it seeks information protected by the attorney-client privilege or work-product doctrine and/or information that is not in DFA's possession, custody, or control and/or that could be acquired with greater accuracy from other parties. DFA further objects to this Interrogatory to the extent the information sought is publicly available, is already in Westrock's possession, custody, or control, and/or is equally accessible to Westrock.
>
> DFA generally identifies the following competitors in the retort operation and shelf-stable, ready-to-drink coffee market. These competitors produce products similar to those made by DFA at its Springfield, Missouri and Cabool, Missouri plants: Westrock Coffee Company, Select Brands, Covance Food Solutions, Horseshoe Beverage, Kerry Custom Products, Berner Foods, Boombox Beverage, OATKA Milk Products, Blue Beverage Group, Livingston Foods, DZ Bottling, LiDestri, Tree House Beverage, and BevHub.  Product offerings for these entities evolve and are publicly available online.

15.    Identify any adverse action taken by DFA against an employee, contractor, agent, or third party relating to the retention, disclosure, or use of DFA's confidential or trade secret information. In your Answer, please provide:

> a.    The name of the employee, contractor, agent, or third party against whom adverse action was taken;
>
> b.    A general description of the confidential or trade secret information at issue;
>
> c.    The actions of the employee, contractor, agent, or third party that prompted the adverse action;

    d.   The adverse action taken by DFA; and

    e.   The date of such action.

**ANSWER:   DFA objects to this Interrogatory on the grounds that it exceeds the limitation of 25 interrogatories, including all discrete subparts, as set forth in Fed. R. Civ. P. 33(a)(1) and seeks information that is not relevant to the claims or defenses at issue, including specific information related to any "adverse action" DFA has taken against any employee, contractor, agent, or third party related to the retention, disclosure, or use of DFA's Confidential and/or Trade Secret information, including a description of the information at issue, the actions of the employee or other individual, the nature of DFA's action, and the date of such actions. DFA further objects to this Interrogatory as overly broad and unduly burdensome as it is unlimited in time and seeks information related to every time in DFA's history that DFA took "adverse action" against a DFA employee, contractor, agent, or third party relating to the retention, disclosure, or use of DFA's confidential or trade secret information. Moreover, the phrase "adverse action," is vague and ambiguous, forcing DFA to speculate as to the intended scope of the Interrogatory. Additionally, as drafted, this Interrogatory could also be read as seeking information that is protected by the attorney-client privilege and/or work product doctrine. DFA, therefore, objects on these additional bases. As Defendants well know and as demonstrated in this case, DFA sends cease and desist letters to employees and former employees to remind them of their obligations under the Non-Disclosure, Ethics, and Conflict of Interest Agreements and/or Separation Agreements with the Company. By way of example, and as relevant to this lawsuit, in August 2025, DFA informed JBT Corporation ("JBT") hat one its service technicians had violated DFA's non-disclosure expectations when performing maintenance on an aluminum container filler, after the technician asked questions that were not related to the work he had been contracted to perform for DFA related to filler for aluminum containers. Specifically, the service technician asked operational and setup questions about the JBT filler for glass bottles, as he was attempting to get another glass bottle filler operational at another customer. DFA contacted JBT and an investigation was opened. DFA understands the investigation substantiated that the JBT contractor violated his non-disclosure expectations and JBT terminated the technician's employment.**

16.    Please state all facts and circumstances by which DFA contends Westrock knew, or had reason to know, that the alleged "Confidential Information," "Confidential Trade Secret Information," and "confidential pricing information" was a trade secret or otherwise subject to a confidentiality obligation.

**ANSWER: DFA objects to this Interrogatory as a premature contention interrogatory to the extent it requests DFA state "all facts and circumstances" by which DFA contends Westrock knew, or had reason to know, that the Confidential**

13

**and/or Trade Secret Information at issue and improperly taken, used, and/or disclosed by Defendants was a trade secret or otherwise subject to a confidentiality obligation.  As set forth above, the parties are in the early stages of discovery and the full extent of the information taken from DFA and/or improperly disclosed or used by Defendants is information that is not in DFA's possession, custody, or control; is known only to Defendants and/or nonparties; and/or that is the subject of ongoing discovery. In particular, the facts Westrock knew or had reason to know related to the acquisition, disclosure, and use of DFA's information and the confidential nature of that information is information that is uniquely in Westrock's possession, custody, and control, and is a central point in DFA's ongoing discovery efforts. As set forth above, the nature of the information at issue, undoubtedly provides a competitive advantage, derives independent economic value from its secrecy, and is not publicly available, generally known, or readily ascertainable. As a competitor and participant in the industry, Westrock was undoubtedly aware of the confidential nature of such information and knew or had reason to know it was not authorized to use, disclose, or rely on such information, including from former DFA employees it actively recruited. Further, Westrock knew or had reason to know this information was acquired by improper means. As described in more detail above, DFA sent the Individual Defendants correspondence reminding them of their obligations under the Non-Disclosure, Ethics, and Conflict of Interest Agreements and/or Separation Agreements with the Company. Additionally, DFA understands that Westrock was directly informed of Westrock's and its employees' possession of DFA's trade secrets and other confidential information by the whistleblower and knew the information came from former DFA employees who had a duty to maintain its secrecy. With this knowledge, Westrock actively recruited DFA employees for its Conway facility, including, upon information and belief, based on the employees' access to DFA's Confidential Information.**

17.    List all employees, contractors, agents, or third parties that signed any confidentiality or non-disclosure agreement in favor of DFA from January 1, 2020 to the present. In your Answer, please provide the title of the individual who signed said agreement(s) and date(s) such agreement(s) were signed.

> **ANSWER:    DFA objects to this Interrogatory as overly broad, including because it contains no meaningful subject matter limitations and seeks a list of every employee, contractor, agent, or third party that signed any confidentiality or non-disclosure agreement in favor of DFA over a six-year period of time—from January 1, 2020 to present—regardless of the nature or subject matter of such agreement or relationship. Such information also isfacially overbroad and unduly burdensome and is not relevant to the claims or defenses at issue or proportional to the needs of the case under Rule 26(b), including because the burden and expense of identifying the proposed discovery outweighs the potential benefit of the proposed discovery. DFA has more than 18,000 employees and engages with thousands of contractors, agents, and third parties that sign confidentiality and non-disclosure agreements.**

14

Additionally, as drafted, this interrogatory seeks information not only from DFA, but also individuals and entities that are not parties to this litigation related to any confidentiality or non-disclosure agreements they entered and that may favor DFA since January 1, 2020. DFA, therefore, further objects to this interrogatory on these grounds, including because it seeks to impose a burden greater than that required under Rules 26 and 33 on DFA. As set forth above, in addition to other measures, DFA requires every employee to sign confidentiality and/or non-disclosure agreements to protect DFA's confidential, proprietary, pricing, and trade secret information.

As it relates to this lawsuit, at least the following individuals signed confidentiality and non-disclosure agreements:

1.  Julie Isakson, Former Quality Assurance Manager, signed on August 16, 2022

2.  Brian Izdepski, Former Senior Director of Food Safety, signed on September 14, 2022

3.  Rebecca Huckabay, Former Manager of Forecasting and Scheduling, signed on March 5, 2022

4.  Cedric Smith, Former Assistant Plant Manager, signed on August 3, 2022

5.  Dustin Slagle, Accountant, signed on August 24, 2022

6.  Patricia Bethurum, Director of Accounting, signed on August 24, 2022

7.  Wendy Davis, Food Safety Supervisor, signed on December 17, 2016

8.  Kerra Chan, Supervisor, Quality Assurance, signed on August 2, 2022.

9.  Dylan Page, Principal Scientist signed on August 1, 2022.

10. Phillip Patrick, Maintenance Manager, signed on October 4, 2022

11. Russell Davis, Production Manager, signed on January 5, 2024.

12. Brian Shipp, Business Improvement Director, signed on June 17, 2022.

15

18.     List all employees, contractors, agents, or third parties that signed any non-competition agreement in favor of DFA from January 1, 2020 to the present. In your Answer, please provide the title of the individual who signed said agreement(s) and date(s) such agreement(s) were signed.

> **ANSWER:**   **DFA objects to Interrogatory No. 18 as overly broad, including because it contains no meaningful subject matter limitations and seeks a list of every employee, contractor, agent, and/or third party that signed a non-competition agreement in favor of DFA over a six-year period of time—from January 1, 2020 to present—regardless of the nature or subject matter of such agreement or relationship. DFA further objects that is Interrogatory is overly broad in scope as it is not limited to the relevant DFA Division, Retort Solutions. Such information is facially overbroad and is not relevant to the claims or defenses at issue. Additionally, as drafted, this Interrogatory seeks information not only from DFA, but also individuals and entities that are not parties to this litigation related to any non-competition agreement they entered and that may favor DFA since January 1, 2020.**
>
> **Based on DFA's reasonable investigation to date, DFA did not enter into non-competition agreements in favor of DFA since January 1, 2020, with employees, contractors, or third parties and/or that would be relevant to the claims and defenses at issue in this litigation.**

19.     Identify each and every nonemployee who has been given access to the "Confidential Information," "Confidential Trade Secret Information," or "confidential pricing information" identified in your Answers to Interrogatory Nos. 1, 2, and 3.  In your Answer, please provide for each such nonemployee:

> a.   The manner in which the "Confidential Information," "Confidential Trade Secret Information," or "confidential pricing information" was conveyed; and
>
> b.   All precautions for maintaining the confidentiality of the "Confidential Information," "Confidential Trade Secret Information," or "confidential pricing information" disclosed to the nonemployee.

> **ANSWER:**





20.    Identify any Individual Defendant who participated in an exit interview with DFA. In your Answer, please provide for each such exit interview:

      a.  The name of the Individual Defendant who participated in the exit interview;

17

b.  The names of any other persons who attended the exit interview;

c.  The location of the exit interview; and

d.  The date of the exit interview.

**ANSWER:**    DFA objects to this Interrogatory to the extent it seeks information that is not relevant to the claims and defenses at issue.

**None of the Individual Defendants participated in an interview with DFA.**

Respectfully submitted,

**HUSCH BLACKWELL LLP**

*/s/ Bryan O. Wade*
Bryan O. Wade, Mo. Bar No. 41939
(admitted *pro hac vice*)
Kayla L. Fowler, Mo Bar No. 76613
(admitted *pro hac vice*)
3810 E. Sunshine Street, Suite 300
Springfield, MO 65809
Telephone:  417-268-4000
Facsimile:   417-268-4040
laura.robinson@huschblackwell.com
bryan.wade@huschblackwell.com
kayla.fowler@huschblackwell.com

Peter Shults, Ark Bar No. 2019021
**SHULTS LAW FIRM LLP**
200 W. Capitol Avenue, Suite 1600
Little Rock, AR 72201-3621
Telephone: 501-375-2301
pshults@ShultsLaw.com

*Attorneys for Plaintiff*
*Dairy Farmers of America, Inc.*

18

## CERTIFICATE OF SERVICE

I hereby certify that on December 15, 2025, a true and correct copy of the above and foregoing ***DFA's Response to Westrock's First Set of Interrogatories***, was served via electronic mail to the following counsel of record:

Anna M. Berman
Kutak Rock LLP
2405 Grand Boulevard, Suite 600
Kansas City, MO 64108-2519
anna.berman@kutakrock.com

***Admitted Pro Hac Vice***
***Attorney for Defendant Westrock Coffee Company***

Jonathan M. Moses
Wachtell, Lipton, Rosen & Katz
51 West 52nd Street
New York, NY 10019
JMMoses@wlrk.com

***Admitted Pro Hac Vice***
***Attorney for Defendants Westrock Coffee***
***Company and Westrock Beverage Company, LLC***

Tina G. Fowler
Rachel A. Riso
Ellis Ellis Hammons & Johnson PC
2808 South Ingram Mill Road, A-104
Springfield, MO 65804
tfowler@eehjfirm.com
rriso@eehjfirm.com

***Admitted Pro Hac Vice***
***Attorney for Defendants Isakson, Izdepski,***
***Huckabay, Smith, Slagle, Bethurem and Davis***

Andrew King
Kutak Rock LLP
124 West Capitol Avenue, Suite 200
Little Rock, AR 72201
andrew.king@kutakrock.com

***Attorney for Defendant Westrock Coffee***
***Company***

Graham Talley
425 West Capitol Avenue, Suite 1800
Little Rock, AR 72201
gtalley@mwlaw.com

***Attorney for Defendants Isakson, Izdepski,***
***Huckabay, Smith, Slagle, Bethurem and Davis***

/s/ Bryan O. Wade
Bryan O. Wade, Mo. Bar No. 41939
(admitted *pro hac vice*)
***Attorney for Plaintiff***
***Dairy Farmers of America, Inc.***

19