# EXHIBIT 2

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF ARKANSAS
CENTRAL DIVISION

DAIRY FARMERS OF AMERICA, INC.,

Plaintiff,

v.                                              Case No. 4:25-cv-00662

WESTROCK COFFEE COMPANY, et al.,

Defendants.

**DAIRY FARMERS OF AMERICA, INC.'S OBJECTIONS AND ANSWERS TO
DEFENDANT WESTROCK COFFEE COMPANY'S
FIRST SET OF INTERROGATORIES TO PLAINTIFF**

Pursuant to Federal Rules of Civil Procedure 26 and 33, Plaintiff, Dairy Farmers of America, Inc. ("DFA") hereby submits its objections and responses to Defendant, Westrock Coffee Company's ("Westrock") First Set of Interrogatories to Plaintiff. Discovery is ongoing, and DFA has not yet completed its investigation related to this Action. DFA's responses are based on its knowledge, information, and belief at this time. Pursuant to Federal Rule of Civil Procedure 26(e), DFA will supplement, correct, or revise its responses and objections based upon any information, evidence, or documentation, which hereinafter may be discovered.

**INSTRUCTIONS and DEFINITIONS**

(a)     In responding to these Interrogatories, you are required to furnish all information that is available to you, or that is under your control, including information in the possession of your attorneys, accountants, advisors, or other persons directly or indirectly employed by, retained by, or otherwise connected with you or your attorneys or anyone else otherwise subject to your control.

1

(b)     With respect to any Interrogatory to which you object based on a claim of privilege, provide a privilege log that includes sufficient information regarding the withheld information to allow Westrock and the Court to assess the privilege claimed.

**Objection: DFA objects to this instruction as it seeks to impose on DFA a burden greater than that required by Fed. R. Civ. P. 26. As outlined in the Parties' Stipulated Electronically Stored Information (ESI) Protocol, DFA will produce an appropriate summary metadata log for any documents withheld on the basis of privilege, work product, or other privileges or protections consistent with Rule 26 within 60 days of its final production, with the exception of the following documents or communications, which will not be included in a privilege log: (a) communications involving outside counsel for the Parties to this Action created after September 10, 2024; (b) information generated before or after the relevant discovery period as agreed to by the Parties or ordered by the Court; (c) communications with non-testifying experts in connection with this Action or testifying experts in connection with this Action; and (d) any privileged materials or work product created by or specifically at the direction of a Party's outside counsel, an agent of outside counsel other than the Party, and any non-testifying experts in connection with the Action.**

(c)     These Interrogatories are continuing and require that you provide all responsive information whenever you obtain or become aware of it, even if it is not in your possession or available to you on the date you first answer.

**Objection:     DFA objects to this instruction to the extent it seeks to impose on DFA a burden greater than that required by the Federal Rules of Civil Procedure and the Parties' ESI Protocol. DFA will timely supplement its responses consistent with its obligations under the Federal Rules of Civil Procedure and any other applicable rule, obligation, or order from the Court.**

(d)     "Individual Defendants" refers to Defendants Julia Isakson, Brian Izdepski, Rebecca Huckabay, Cedric Smith, Dustin Slagle, and Patricia Bethurem.

(e)     "Complaint" refers to the Second Amended Complaint filed in this action on July 14, 2025.

(f)     "Person" means any natural person or individual, or any firm, partnership (general or limited), limited liability company, proprietorship, corporation, unincorporated association, trust, joint venture, or any other legal or governmental entity, organization, or body of any type

whatsoever, as well as all agents, officers, directors, boards, committees, subcommittees, employees, consultants, representatives, or instrumentalities thereof.

**Objection:    DFA objects to this definition as vague and confusing and overly broad, including to the extent it defines person to mean any consultant, representative, or instrumentality of any natural person or individual, entity, or "body of any type whatsoever." DFA will apply the ordinary definition of "person," and produce nonprivileged, relevant, and responsive information that falls within the scope of Rule 26(b) and is within DFA's knowledge, custody, possession, or control.**

## INTERROGATORIES

1.      Identify with specificity all "Confidential Information" that you allege is at issue in this litigation.

**ANSWER:    DFA objects to this Interrogatory as a premature contention interrogatory to the extent it seeks a complete accounting of all information DFA considers "Confidential" and/or alleges is at issue in this litigation. This is particularly true given that the parties are in the early stages of discovery and the full extent Confidential Information taken from DFA and/or improperly used by Defendants is information that is not in DFA's possession, custody, or control; is known only to Defendants and/or nonparties; and/or that is subject of and will be explored in the course of discovery. DFA further objects to this Interrogatory to the extent it appears to request detailed descriptions of the very information DFA seeks to protect through this litigation and that is not otherwise publicly available.**

**DFA contends that Defendants improperly took, disclosed, and/or used DFA's confidential and proprietary information, including certain Confidential Trade Secret Information, such as that identified in Paragraphs 26 and 27 of the Complaint. The confidential information includes, but is not limited to: customer lists, call lists, contracts, and other confidential customer data; memoranda, summaries, notes, records, reports, and analyses; information technology processes, practices, security standards and designs, security protocols, administrator identities, and passwords; employee records, lists, contact information, and other confidential employee data (including payroll and personnel records),; member records, lists, contact information, payroll, test results, farm surveys, performance dashboards, and other confidential member data, other information that is not publicly available; and material derived in whole or in part from Confidential Information.**

2.      Identify with specificity all "Confidential Trade Secret Information" that you allege is at issue in this litigation.

**ANSWER:    DFA objects to this Interrogatory as a premature contention interrogatory to the extent it requests DFA identify "with specificity" all**

3

**"Confidential Trade Secret Information" DFA alleges is at issue in this litigation. This is particularly true given that the parties are in the early stages of discovery and the full extent of the Confidential Trade Secret Information taken from DFA and/or improperly disclosed or used by Defendants is information that is not in DFA's possession, custody, or control; is known only to Defendants and/or nonparties; and/or that is the subject of and will be explored in the course of discovery. DFA further objects to this Interrogatory to the extent it appears to request detailed descriptions of the very information DFA seeks to protect through this litigation and that is not otherwise publicly available.**

**DFA contends that Defendants improperly took, disclosed, and/or used DFA's confidential and proprietary information, including, certain Confidential Trade Secret Information, such as that identified in Paragraph 26 and 27 of the Complaint. The Confidential Trade Secret Information includes, but is not limited to: sketches, plans (including strategic plans and marketing plans), drawings, and other confidential research and development data; manufacturing processes and practices; equipment; equipment configurations, chemical and/or product formulas; and composition information for DFA's products, supplier pricing, costs, business processes and practices, and distribution methods, the documents and information identified in Paragraphs 26 and 27, and/or any combination or compilation of the confidential, proprietary, and other information taken, acquired, disclosed, or used by Defendants and that qualifies as a protectable trade secret**

3.    Identify which specificity the "confidential pricing information" that you allege is

at issue in this litigation.

**ANSWER: DFA objects to this Interrogatory as a premature contention interrogatory to the extent it requests DFA identify with "specificity" all "confidential pricing information" DFA alleges is at issue in this litigation. This is particularly true given that the parties are in the early stages of discovery and the full extent of the confidential pricing information taken from DFA and/or improperly disclosed or used by Defendants is information that is not in DFA's possession, custody, or control; is known only to Defendants and/or nonparties; and/or is the subject of ongoing discovery. DFA further objects to this Interrogatory to the extent it appears to request detailed descriptions of the very information DFA seeks to protect through this litigation and that is not otherwise publicly available.**

**DFA contends that Defendants improperly took, disclosed, and/or used DFA's confidential, proprietary, and trade secret information, including, but not limited to: supplier and source pricing, as well as other financial information and data related**

4

**to DFA costs, business processes and practices, distribution methods, audit reports, accounting and financial practices, and technology.**

4.     Please describe with specificity how the "Confidential Information," "Confidential Trade Secret Information," and "confidential pricing information" identified in your Answers to Interrogatory Nos. 1, 2, and 3 were developed. In your Answer, please state:

    a. When each piece of "Confidential Information", "Confidential Trade Secret Information", and "confidential pricing information" was developed;

    b. How it was developed;

    c. By whom; and

    d. The cost incurred by DFA in said development.

**<u>ANSWER</u>:    DFA objects to this Interrogatory as a premature contention interrogatory to the extent it requests DFA identify "with specificity" how various confidential information was "developed." This is particularly true, as noted above, given that the parties are in the early stages of discovery and the full extent of the information taken from DFA and/or improperly disclosed or used by Defendants is information that is not in DFA's possession, custody, or control; is known only to Defendants and/or nonparties; and/or that is the subject of ongoing discovery.  DFA further objects to this request as overly broad, unduly burdensome, and vague and ambiguous, including because it is unlimited in time and seeks information regarding "each piece" of confidential information and how and when that information "was developed", by "whom it was developed," and the costs incurred by DFA in the "development" of this information. A description of how various confidential information – the full extent of which Defendants improperly took from DFA is still unknown – including when it was developed, by whom it was developed, and the costs incurred by DFA at any point in time in connection with that information is not relevant to the claims or defenses at issue, risks disclosing the very information DFA seeks to protect through this litigation, and is not proportional to the needs of the case, including because the burden of the burden of identifying this information outweighs any potential benefit. All Confidential Information, Confidential Trade Secret Information, Confidential Pricing Information was developed internally by DFA and its employees. DFA employees acknowledge that all original works prepared by the employee (solely or jointly with others) within the scope of their employment are considered "works for hire" and owned by DFA. Throughout the development stage, access to this type of information is limited by role-based permissions, physical**

5

**security (such as badge access to labs or server rooms), digital encryption, and regular employee training on confidentiality and data protection.**

5.      Identify any "Confidential Information," "Confidential Trade Secret Information," and "confidential pricing information," as identified in your Answers to Interrogatory Nos. 1, 2, and 3, that was developed, in whole or in part, by the joint venture referenced in Paragraph 16 of the Complaint.  In your Answer, please state, for each such piece of information:

> **ANSWER: DFA objects to this Interrogatory as a premature contention interrogatory to the extent it requests DFA identify various confidential information taken by Defendants, the full extent of which is not within DFA's knowledge, possession, custody, or control, and that is the subject of ongoing discovery, as set forth above. DFA likewise objects to this Interrogatory to the extent it purports to request DFA to identify and describe the very confidential information DFA seeks to protect through this litigation and that is not publicly known or available. DFA further objects to this request as vague and ambiguous to the extent it asks DFA to identify various confidential information that was "developed in whole or in part, by the joint venture referenced in Paragraph 16." In Paragraph 16, DFA notes that it entered into confidential packing agreements with a joint venture to manufacture, market, sell, and distribute ready-to-drink coffee and energy beverages. These agreements include non-disclosure and confidentiality provisions with entities that are not parties to the litigation. Accordingly, DFA objects to this Interrogatory to the extent it seeks information subject to non-disclosure or confidentiality agreements with third parties, including because such disclosure would violate DFA's contractual obligations and the privacy and confidentiality interests of third parties. To the extent discovery reveals that Defendants improperly took, disclosed, and/or used confidential information that was developed in whole or in part by the joint venture referenced in Paragraph 16 and that is relevant to the claims and defenses at issue, DFA will consult with the joint venture to request authorization to identify any responsive information and after providing any and all required notice to third parties and for an opportunity for them to object to such disclosure as appropriate.**

6.      For the information identified in your answer to Interrogatory No. 5, identify all provisions of the Joint Venture Agreements, identified in Paragraph 16 of the Complaint, governing the confidentiality of said information.

> **ANSWER:    DFA incorporates its objections to Interrogatory 5 above, including that DFA objects to this Interrogatory to the extent it seeks information related to a confidential agreement with a third party, which is not relevant to the claims or defenses at issue. As set forth above, to the extent discovery reveals that Defendants improperly took, disclosed, and/or used confidential information that was developed in whole or in part by the Joint Venture referenced in Paragraph 16 and that is**

**relevant to the claims and defenses at issue, DFA will consult with the Joint Venture to request authorization to identify the applicable confidentiality provisions in the Joint Venture Agreement and to provide notice to the third party, including so that it has an opportunity to object to such disclosure as appropriate.**

7.    For the information identified in your answer to Interrogatory No. 5, identify all provisions of the Joint Venture Agreements, identified in Paragraph 16 of the Complaint, governing the ability of the parties to the Joint Venture Agreements to disclose said information.

**ANSWER:    DFA incorporates its objections Interrogatory 5 above, including that DFA objects to this Interrogatory to the extent it seeks information related to a confidential agreement with a third party, which is not relevant to the claims or defenses at issue. As set forth above, to the extent discovery reveals that Defendants improperly took, disclosed, and/or used confidential information that was developed in whole or in part by the joint venture referenced in Paragraph 16 and that is relevant to the claims and defenses at issue, DFA will consult with the joint venture to request authorization to identify the applicable confidentiality provisions in the Joint Venture Agreement and to provide notice to the third party, including so that it has an opportunity to object to such disclosure as appropriate.**

8.    Identify all locations where the "Confidential Information," "Confidential Trade Secret Information," and "confidential pricing information" identified in your Answers to Interrogatory Nos. 1, 2, and 3 is located within DFA, including the names and titles of all those who have access to said locations.

**ANSWER: DFA objects to this Interrogatory as a premature contention interrogatory to the extent it requests DFA identify all locations where the confidential information identified in DFA's Answers to Interrogatory Nos. 1-3 is located, including the names and titles of all those that have access to those locations. As set forth above, the parties are in the early stages of discovery and the full extent of the information taken from DFA and/or improperly disclosed or used by Defendants is information that is not in DFA's possession, custody, or control; is known only to Defendants and/or nonparties; and/or that is the subject of ongoing discovery. DFA further objects to this Interrogatory because it is overly broad and unduly burdensome, it is unlimited in time it seeks information, including the names and titles, of all individuals who have ever had access to the requested information at any point in time. As set forth above, the information at issue related to retort solutions includes at least the following: pricing information and safety and compliance documentation and information. This information is stored behind multiple firewalls, with approximately 5-6 individuals having authority and login credentialing to access the information, depending on the nature of the information and the time period at issue. Other Confidential Information is stored on company**

**servers and accessible by DFA employees. All employees are required to sign a Non-Disclosure Agreement that acknowledges this Confidential Information is DFA property and should not be disclosed.**

9.      Describe all measures taken by DFA to maintain the secrecy of the "Confidential Information," "Confidential Trade Secret Information," and "confidential pricing information" identified in your Answers to Interrogatory Nos. 1, 2, and 3.

> **ANSWER:    DFA objects to this Interrogatory as it seeks information protected by the attorney-client privilege and/or work product doctrine. DFA further objects to this Interrogatory as overly broad and unduly burdensome because it is unlimited in time and scope and seeks information related to every measure or action, formal or informal, taken by DFA to maintain the secrecy of various Confidential Information, including proprietary trade secrets and pricing information. "[A]ll measures" taken by DFA to maintain secrecy is vague and ambiguous and could be read to encompass a multitude of scenarios related to the daily tasks and assignments necessary to carry out operations.  DFA further objects to this Interrogatory as a premature contention interrogatory to the extent it requests DFA describe all measures to maintain the secrecy of the various information identified in DFA's Answers to Interrogatory Nos. 1-3. As set forth above, the parties are in the early stages of discovery and the full extent of the information taken from DFA and/or improperly disclosed or used by Defendants is information that is not in DFA's possession, custody, or control; is known only to Defendants and/or nonparties; and/or that is the subject of ongoing discovery.**
>
> **Among other measures, DFA takes the following actions to maintain the secrecy of its Confidential and/or Trade Secret Information. DFA requires every employee to sign an Employee Non-Disclosure, Ethics, and Conflict of Interest Agreement as an initial measure to maintain the secrecy of Confidential Information, Confidential Trade Secret Information, and Confidential Pricing Information. DFA's Retort Solutions group also has multiple layers of security access for trade secret and proprietary information. Only certain users, based on their role at DFA, are granted access and credentialing to access trade secret information.**

10.     Identify all persons responsible for monitoring and enforcing the measures identified in your Answer to Interrogatory No. 9. In your Answer, please provide each individual's name, title, and contact information.

> **ANSWER:    DFA objects to this Interrogatory as overly broad and unduly burdensome because it is unlimited in time and seeks information of all persons who in any way monitored or enforced security measures for any Confidential, Trade Secret, or pricing information. DFA further objects to this Interrogatory becausehe identity of every person at any point in time, including their title and contact**

8

**information, who enforced the measures to protect the secrecy of DFA's Confidential and Trade Secret Information is not relevant to the claims and defenses in this action. DFA further objects to this Interrogatory to the extent it seeks information protected by the attorney-client privilege and/or work product doctrine. Additionally, Defendants' request for all "measures" taken by DFA to maintain secrecy is vague and ambiguous and could be read to encompass a multitude of scenarios related to the daily tasks and assignments necessary to carry out daily tasks and operations, including, by way of example, DFA's requirement that every employee sign an Employee Non-Disclosure, Ethics, and Conflict of Interest Agreement, which requires the employee to agree and acknowledge that the employee will maintain DFA information in a confidential manner. Thus, every employee, including former employees, has a responsibility to maintain the secrecy and confidentiality of DFA information. The burden and expense of identifying every DFA employee at any point in time responsible for monitoring and enforcing security measures outweighs any potential benefit and is not proportional to the needs of the case. DFA is willing to meet and confer regarding the scope of this Interrogatory.**

11.     Identify each act by Westrock that you contend constitutes improper acquisition, disclosure, or use of the "Confidential Information," "Confidential Trade Secret Information," and "confidential pricing information" identified in your Answers to Interrogatory Nos. 1, 2, and 3. In your Answer, please include:

       a.  The individual alleged to have committed each act;

       b.  The date of each act;

       c.  The specific piece of "Confidential Information", "Confidential Trade Secret Information", and "confidential pricing information" involved; and

       d.  A description of how such acquisition, disclosure, or use harmed DFA.

**ANSWER: DFA objects to this Interrogatory, including its discrete subparts, as compound and violative of Federal Rule of Civil Procedure 33(a)(1) because it contains multiple distinct questions under the umbrella of a single interrogatory in an apparent attempt to evade Rule 33's numerical limits. DFA is willing to meet and confer with Defendants regarding the scope of this Interrogatory. DFA further objects to this Interrogatory as a premature contention interrogatory to the extent it requests DFA identify each and every act by Westrock that DFA constitutes an improper acquisition, disclosure, or use of DFA's Confidential and/or Trade Secret Information, including the individual alleged to have committed such act, the date of each act, the specific information at issue, and a description of how such acquisition, disclosure, or use harmed DFA. As set forth above, the parties are in the early stages of discovery and the full extent of the information taken from DFA and/or improperly disclosed or used by Defendants and other acts related to Defendants' acquisition,**

disclosure, and use of DFA's information is information that is not in DFA's possession, custody, or control; is known only to Defendants and/or nonparties; and/or that is the subject of ongoing discovery. To be sure, the Individual Defendants and Westrock – not DFA – are the best source for this information. And DFA has requested this information from Defendants. Further, in addition to constituting a separate and distinct interrogatory, subpart (d) seeks information that is properly the subject of expert discovery, including as it relates to the actual losses and/or unjust enrichment caused by Defendants' actions. DFA will disclose such information consistent with its obligations under the Federal Rules of Civil Procedure and the Scheduling Order entered in this matter. Pursuant to DFA's Non-Disclosure, Ethics, and Conflict of Interest Agreements, DFA employees, including the Individual Defendants, agreed: (1) they would not disclose DFA's Confidential Information and/or trade secrets; (2) all inventions and Confidential Information and trade secrets they developed while at DFA are DFA's property; and (3) they would return all DFA documents containing Confidential Information and/or Trade Secrets to DFA upon their departure from DFA. The Individual Defendants violated their respective agreements and improperly acquired, disclosed, and/or used DFA's confidential and other information by retaining DFA Confidential Information upon termination, by relying on that information at Westrock and for Westrock's benefit, and/or by disseminating that information to or otherwise sharing that information with Westrock. Westrock knowingly acquired, relied on, and used DFA's confidential information through improper means. In fact, Westrock was directly informed of Westrock's and its employees' possession of DFA's trade secrets and other confidential information by the Whistleblower and knew the information came from former DFA employees who had a duty to maintain its secrecy. Additionally, Westrock actively recruited DFA employees for its Conway facility, at times using former DFA employees to do so, fully aware that these employees had access to DFA's confidential information at the time employment discussions began.

Upon information and belief, these recruitment efforts were designed and intended to provide Westrock with additional access to DFA's confidential and trade secret information.

12.    Identify all persons with knowledge of each item of "Confidential Information", "Confidential Trade Secret Information", and "confidential pricing information" identified in your Answers to Interrogatory Nos. 1, 2, and 3, whether said individual is a DFA employee, contractor, or consultant, or third party.

ANSWER:    DFA objects to this Interrogatory as a premature contention interrogatory to the extent it requests DFA identify each and every person "with knowledge" of each item of Confidential or Trade Secret Information identified in DFA's Answers to Interrogatory Nos. 1-3. As set forth above, the parties are in the early stages of discovery and the full extent of the information taken from DFA and/or improperly disclosed or used by Defendants is information that is not in DFA's

10

possession, custody, or control; is known only to Defendants and/or nonparties; and/or that is the subject of ongoing discovery. DFA further objects to Interrogatory No. 12 as overly broad and unduly burdensome because it is unlimited in time and contains no meaningful subject matter limitations seeking the identity of every person, at any point in time, regardless of whether that person is a DFA employee or contractor, consultant, or third party, with any knowledge whatsoever relating to any DFA Confidential or Trade Secret Information ultimately taken by and/or improperly used or disclosed by Defendants. The phrase "with knowledge" is vague and ambiguous and could be read to encompass a multitude of extraordinarily broad and irrelevant scenarios, including mere knowledge the documents exist, knowledge of the document contents, and/or knowledge the information is confidential. Information regarding any knowledge whatsoever by any person at any point in time related to DFA's Confidential and Trade Secret Information, as identified in its responses to Interrogatory Nos. 1-3 is not relevant to the claims and defenses, nor is it proportional to the needs of the case. The burden and expense of identifying the proposed discovery outweighs the potential benefit, if any under Rule 26's proportionality factors. DFA identifies the following current and former DFA employees as having knowledge regarding the proprietary and confidential nature of the documents taken by Individual Defendants.

1.    **Individual Defendants**

2.    **Haley Olenski**

3.    **CJ McKinney**

4.    **Paul Gothard**

5.    **Ethan Pridemore**

6.    **Cathy Hicks**

7.    **Dalton Harris**

8.    **Preston Green**

13.    Identify the "whistleblower" referenced in Paragraphs 25-31 of the Complaint.

**ANSWER:** ██████████████████████
████████████████████████

14.    Identify all competitors who make products made by the manufacturing facilities described in Paragraph 15 of the Complaint, the competitive product(s) made by each competitor, and United States market share for each competitor, including but not limited to retort operations and shelf-stable, ready-to-drink coffee products.

> **ANSWER:**    DFA objects to this Interrogatory as vague, overly broad, and unduly burdensome, including because it is unlimited in time and contains no meaningful subject matter limitations. As written, this Interrogatory requests DFA identify every competitor who makes, or has ever made, a product that DFA's manufacturing facilities in Greene County and Texas County makes or has ever made over an unlimited period of time, including each competitor's market share nationwide. DFA further objects because such information is not relevant to the claims or defenses at issue, nor is it proportional to the needs of the case under Rule 26(b). DFA further objects to this Interrogatory to the extent it seeks information protected by the attorney-client privilege or work-product doctrine and/or information that is not in DFA's possession, custody, or control and/or that could be acquired with greater accuracy from other parties. DFA further objects to this Interrogatory to the extent the information sought is publicly available, is already in Westrock's possession, custody, or control, and/or is equally accessible to Westrock.
>
> DFA generally identifies the following competitors in the retort operation and shelf-stable, ready-to-drink coffee market. These competitors produce products similar to those made by DFA at its Springfield, Missouri and Cabool, Missouri plants: Westrock Coffee Company, Select Brands, Covance Food Solutions, Horseshoe Beverage, Kerry Custom Products, Berner Foods, Boombox Beverage, OATKA Milk Products, Blue Beverage Group, Livingston Foods, DZ Bottling, LiDestri, Tree House Beverage, and BevHub.  Product offerings for these entities evolve and are publicly available online.

15.    Identify any adverse action taken by DFA against an employee, contractor, agent, or third party relating to the retention, disclosure, or use of DFA's confidential or trade secret information. In your Answer, please provide:

   a.  The name of the employee, contractor, agent, or third party against whom adverse action was taken;

   b.  A general description of the confidential or trade secret information at issue;

   c.  The actions of the employee, contractor, agent, or third party that prompted the adverse action;

12

    d.  The adverse action taken by DFA; and

    e.  The date of such action.

**ANSWER:**   **DFA objects to this Interrogatory on the grounds that it exceeds the limitation of 25 interrogatories, including all discrete subparts, as set forth in Fed. R. Civ. P. 33(a)(1) and seeks information that is not relevant to the claims or defenses at issue, including specific information related to any "adverse action" DFA has taken against any employee, contractor, agent, or third party related to the retention, disclosure, or use of DFA's Confidential and/or Trade Secret information, including a description of the information at issue, the actions of the employee or other individual, the nature of DFA's action, and the date of such actions. DFA further objects to this Interrogatory  as overly broad and unduly burdensome as it is unlimited in time and seeks information related to every time in DFA's history that DFA took "adverse action" against a DFA employee, contractor, agent, or third party relating to the retention, disclosure, or use of DFA's confidential or trade secret information. Moreover, the phrase "adverse action," is vague and ambiguous, forcing DFA to speculate as to the intended scope of the Interrogatory. Additionally, as drafted, this Interrogatory could also be read as seeking information that is protected by the attorney-client privilege and/or work product doctrine. DFA, therefore, objects on these additional bases. As Defendants well know and as demonstrated in this case, DFA sends cease and desist letters to employees and former employees to remind them of their obligations under the Non-Disclosure, Ethics, and Conflict of Interest Agreements and/or Separation Agreements with the Company. By way of example, and as relevant to this lawsuit, in August 2025, DFA informed JBT Corporation ("JBT") hat one its service technicians had violated DFA's non-disclosure expectations when performing maintenance on an aluminum container filler, after the technician asked questions that were not related to the work he had been contracted to perform for DFA related to filler for aluminum containers. Specifically, the service technician asked operational and setup questions about the JBT filler for glass bottles, as he was attempting to get another glass bottle filler operational at another customer. DFA contacted JBT and an investigation was opened. DFA understands the investigation substantiated that the JBT contractor violated his non-disclosure expectations and JBT terminated the technician's employment.**

16.    Please state all facts and circumstances by which DFA contends Westrock knew, or had reason to know, that the alleged "Confidential Information," "Confidential Trade Secret Information," and "confidential pricing information" was a trade secret or otherwise subject to a confidentiality obligation.

**ANSWER: DFA objects to this Interrogatory as a premature contention interrogatory to the extent it requests DFA state "all facts and circumstances" by which DFA contends Westrock knew, or had reason to know, that the Confidential**

**and/or Trade Secret Information at issue and improperly taken, used, and/or disclosed by Defendants was a trade secret or otherwise subject to a confidentiality obligation. As set forth above, the parties are in the early stages of discovery and the full extent of the information taken from DFA and/or improperly disclosed or used by Defendants is information that is not in DFA's possession, custody, or control; is known only to Defendants and/or nonparties; and/or that is the subject of ongoing discovery. In particular, the facts Westrock knew or had reason to know related to the acquisition, disclosure, and use of DFA's information and the confidential nature of that information is information that is uniquely in Westrock's possession, custody, and control, and is a central point in DFA's ongoing discovery efforts. As set forth above, the nature of the information at issue, undoubtedly provides a competitive advantage, derives independent economic value from its secrecy, and is not publicly available, generally known, or readily ascertainable. As a competitor and participant in the industry, Westrock was undoubtedly aware of the confidential nature of such information and knew or had reason to know it was not authorized to use, disclose, or rely on such information, including from former DFA employees it actively recruited. Further, Westrock knew or had reason to know this information was acquired by improper means. As described in more detail above, DFA sent the Individual Defendants correspondence reminding them of their obligations under the Non-Disclosure, Ethics, and Conflict of Interest Agreements and/or Separation Agreements with the Company. Additionally, DFA understands that Westrock was directly informed of Westrock's and its employees' possession of DFA's trade secrets and other confidential information by the whistleblower and knew the information came from former DFA employees who had a duty to maintain its secrecy. With this knowledge, Westrock actively recruited DFA employees for its Conway facility, including, upon information and belief, based on the employees' access to DFA's Confidential Information.**

17.     List all employees, contractors, agents, or third parties that signed any confidentiality or non-disclosure agreement in favor of DFA from January 1, 2020 to the present. In your Answer, please provide the title of the individual who signed said agreement(s) and date(s) such agreement(s) were signed.

> **ANSWER:    DFA objects to this Interrogatory as overly broad, including because it contains no meaningful subject matter limitations and seeks a list of every employee, contractor, agent, or third party that signed any confidentiality or non-disclosure agreement in favor of DFA over a six-year period of time—from January 1, 2020 to present—regardless of the nature or subject matter of such agreement or relationship. Such information also isfacially overbroad and unduly burdensome and is not relevant to the claims or defenses at issue or proportional to the needs of the case under Rule 26(b), including because the burden and expense of identifying the proposed discovery outweighs the potential benefit of the proposed discovery. DFA has more than 18,000 employees and engages with thousands of contractors, agents, and third parties that sign confidentiality and non-disclosure agreements.**

Additionally, as drafted, this interrogatory seeks information not only from DFA, but also individuals and entities that are not parties to this litigation related to any confidentiality or non-disclosure agreements they entered and that may favor DFA since January 1, 2020. DFA, therefore, further objects to this interrogatory on these grounds, including because it seeks to impose a burden greater than that required under Rules 26 and 33 on DFA. As set forth above, in addition to other measures, DFA requires every employee to sign confidentiality and/or non-disclosure agreements to protect DFA's confidential, proprietary, pricing, and trade secret information.

As it relates to this lawsuit, at least the following individuals signed confidentiality and non-disclosure agreements:

1. Julie Isakson, Former Quality Assurance Manager, signed on August 16, 2022

2. Brian Izdepski, Former Senior Director of Food Safety, signed on September 14, 2022

3. Rebecca Huckabay, Former Manager of Forecasting and Scheduling, signed on March 5, 2022

4. Cedric Smith, Former Assistant Plant Manager, signed on August 3, 2022

5. Dustin Slagle, Accountant, signed on August 24, 2022

6. Patricia Bethurum, Director of Accounting, signed on August 24, 2022

7. Wendy Davis, Food Safety Supervisor, signed on December 17, 2016

8. Kerra Chan, Supervisor, Quality Assurance, signed on August 2, 2022.

9. Dylan Page, Principal Scientist signed on August 1, 2022.

10. Phillip Patrick, Maintenance Manager, signed on October 4, 2022

11. Russell Davis, Production Manager, signed on January 5, 2024.

12. Brian Shipp, Business Improvement Director, signed on June 17, 2022.

15

18.     List all employees, contractors, agents, or third parties that signed any non-competition agreement in favor of DFA from January 1, 2020 to the present. In your Answer, please provide the title of the individual who signed said agreement(s) and date(s) such agreement(s) were signed.

> **ANSWER:    DFA objects to Interrogatory No. 18 as overly broad, including because it contains no meaningful subject matter limitations and seeks a list of every employee, contractor, agent, and/or third party that signed a non-competition agreement in favor of DFA over a six-year period of time—from January 1, 2020 to present—regardless of the nature or subject matter of such agreement or relationship. DFA further objects that is Interrogatory is overly broad in scope as it is not limited to the relevant DFA Division, Retort Solutions. Such information is facially overbroad and is not relevant to the claims or defenses at issue. Additionally, as drafted, this Interrogatory seeks information not only from DFA, but also individuals and entities that are not parties to this litigation related to any non-competition agreement they entered and that may favor DFA since January 1, 2020.**
>
> **Based on DFA's reasonable investigation to date, DFA did not enter into non-competition agreements in favor of DFA since January 1, 2020, with employees, contractors, or third parties and/or that would be relevant to the claims and defenses at issue in this litigation.**

19.     Identify each and every nonemployee who has been given access to the "Confidential Information," "Confidential Trade Secret Information," or "confidential pricing information" identified in your Answers to Interrogatory Nos. 1, 2, and 3. In your Answer, please provide for each such nonemployee:

> a. The manner in which the "Confidential Information," "Confidential Trade Secret Information," or "confidential pricing information" was conveyed; and
>
> b. All precautions for maintaining the confidentiality of the "Confidential Information," "Confidential Trade Secret Information," or "confidential pricing information" disclosed to the nonemployee.

**ANSWER:**

16



20.     Identify any Individual Defendant who participated in an exit interview with DFA.

In your Answer, please provide for each such exit interview:

      a.  The name of the Individual Defendant who participated in the exit interview;

b. The names of any other persons who attended the exit interview;

c. The location of the exit interview; and

d. The date of the exit interview.

**ANSWER:**    DFA objects to this Interrogatory to the extent it seeks information that is not relevant to the claims and defenses at issue.

**None of the Individual Defendants participated in an interview with DFA.**

Respectfully submitted,

**HUSCH BLACKWELL LLP**

*/s/ Bryan O. Wade*
Bryan O. Wade, Mo. Bar No. 41939
(admitted *pro hac vice*)
Kayla L. Fowler, Mo Bar No. 76613
(admitted *pro hac vice*)
3810 E. Sunshine Street, Suite 300
Springfield, MO 65809
Telephone:  417-268-4000
Facsimile:   417-268-4040
laura.robinson@huschblackwell.com
bryan.wade@huschblackwell.com
kayla.fowler@huschblackwell.com


Peter Shults, Ark Bar No. 2019021
**SHULTS LAW FIRM LLP**
200 W. Capitol Avenue, Suite 1600
Little Rock, AR 72201-3621
Telephone: 501-375-2301
pshults@ShultsLaw.com

*Attorneys for Plaintiff*
*Dairy Farmers of America, Inc.*

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on December 15, 2025, a true and correct copy of the above and foregoing ***DFA's Response to Westrock's First Set of Interrogatories***, was served via electronic mail to the following counsel of record:

Anna M. Berman
Kutak Rock LLP
2405 Grand Boulevard, Suite 600
Kansas City, MO 64108-2519
anna.berman@kutakrock.com

***Admitted Pro Hac Vice***
***Attorney for Defendant Westrock Coffee Company***

Jonathan M. Moses
Wachtell, Lipton, Rosen & Katz
51 West 52nd Street
New York, NY 10019
JMMoses@wlrk.com

***Admitted Pro Hac Vice***
***Attorney for Defendants Westrock Coffee***
***Company and Westrock Beverage Company, LLC***

Tina G. Fowler
Rachel A. Riso
Ellis Ellis Hammons & Johnson PC
2808 South Ingram Mill Road, A-104
Springfield, MO 65804
tfowler@eehjfirm.com
rriso@eehjfirm.com

***Admitted Pro Hac Vice***
***Attorney for Defendants Isakson, Izdepski,***
***Huckabay, Smith, Slagle, Bethurem and Davis***

Andrew King
Kutak Rock LLP
124 West Capitol Avenue, Suite 200
Little Rock, AR 72201
andrew.king@kutakrock.com

***Attorney for Defendant Westrock Coffee***
***Company***

Graham Talley
425 West Capitol Avenue, Suite 1800
Little Rock, AR 72201
gtalley@mwlaw.com

***Attorney for Defendants Isakson, Izdepski,***
***Huckabay, Smith, Slagle, Bethurem and Davis***

/s/ Bryan O. Wade
Bryan O. Wade, Mo. Bar No. 41939
(admitted *pro hac vice*)
***Attorney for Plaintiff***
***Dairy Farmers of America, Inc.***

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF ARKANSAS
CENTRAL DIVISION

DAIRY FARMERS OF AMERICA, INC.,

Plaintiff,

v.

WESTROCK COFFEE COMPANY, et al.,

Defendants.

Case No. 4:25-cv-00662

**DAIRY FARMERS OF AMERICA, INC.'S RESPONSE
TO DEFENDANT WESTROCK COFFEE COMPANY'S
FIRST REQUESTS FOR PRODUCTION TO PLAINTIFF**

Pursuant to Rules 26 and 34 of the Federal Rules of Civil Procedure, Plaintiff, Dairy Farmers of America, Inc. ("DFA"), by and through counsel, responds to Defendant Westrock Coffee Company's ("Westrock") First Requests for Production to Plaintiff. DFA reserves the right to supplement its responses and objections as discovery, other fact-finding, and DFA's analyses continues, and to the extent allowed and/or required by the Federal Rules of Civil Procedure, agreement of the parties or Order of the Court.

DFA will begin producing documents on a rolling basis on or before December 22, 2025.

**INSTRUCTIONS and DEFINITIONS**

(a)    In responding to these Requests for Production, you are required to furnish all information that is available to you, or that is under your control, including information in the possession of your attorneys, accountants, advisors, or other persons directly or indirectly employed by, retained by, or otherwise connected with you or your attorneys or anyone else otherwise subject to your control.

1

(b)     With respect to any Request to which you object based on a claim of privilege, provide a privilege log that includes sufficient information regarding the withheld document to allow Westrock and the Court to assess the privilege claimed in accordance with Fed. R. Civ. P. 26(b)(5)(A).

> **Objection: DFA objects to this instruction as it seeks to impose on DFA a burden greater than that required by Fed. R. Civ. P. 26. As outlined in the Parties' Stipulated Electronically Stored Information (ESI) Protocol, DFA will produce an appropriate summary metadata log for any documents withheld on the basis of privilege, work product, or other privileges or protections consistent with Rule 26 within 60 days of its final production, with the exception of the following documents or communications, which will not be included in a privilege log: (a) communications involving outside counsel for the Parties to this Action created after September 10, 2024; (b) information generated before or after the relevant discovery period as agreed to by the Parties or ordered by the Court; (c) communications with non-testifying experts in connection with this Action or testifying experts in connection with this Action; and (d) any privileged materials or work product created by or specifically at the direction of a Party's outside counsel, an agent of outside counsel other than the Party, and any non-testifying experts in connection with the Action.**

(c)     These Requests are continuing and require that you produce all responsive documents and other materials whenever you obtain or become aware of them, even if they are not in your possession or available to you on the date you first produce documents and/or other materials pursuant to these Requests.

(d)     Unless otherwise specified, all requested items are to be provided to Westrock's counsel within thirty days and produced in accordance with the parties' to be entered ESI Protocol.

(e)     For each of the items or categories of items, these Requests include all documents and electronically stored information in whatever form they may exist to the fullest extent of Federal Rule 34(a)(1)(A). As provided in Rule 34(b)(C), all electronically stored information is to be produced in its original native format unless otherwise specified or as otherwise agreed in writing by all parties.

(f)     "Individual Defendants" refers to Defendants Julia Isakson, Brian Izdepski, Rebecca Huckabay, Cedric Smith, Dustin Slagle, and Patricia Bethurem.

(g)     "Communication" or "communications" means the transmittal of information (in the form of facts, ideas, inquiries, or otherwise), whether orally or in writing, or by any other means or medium, between or among two or more Persons or entities including but not limited to spoken words, inquiries, discussions, conversations, conferences, interviews, negotiations, agreements, reports, meetings, correspondence, letters, electronically transmitted messages (*e.g.*, email, text messages, instant messaging), postings on Internet bulletin boards, or other forms of written, verbal or electronic intercourse, however transmitted, ESI (as defined below), and documents, as defined herein.

> **Objection**: DFA objects to this instruction because it appears to attempt to impose a burden on DFA greater than that required by Rules 26(b)(1) and 34 in that it seeks information for which the burden of searching and producing such information outweighs any potential benefit. DFA will apply the ordinary definition of "communication" in responding to these requests and produce information that falls within the scope of Rule 26(b).

(h)     "Document" or "documents" shall have the broadest meaning permitted under the Federal Rules of Civil Procedure and shall include, without limitation, the original and all non-identical copies of any handwritten, printed, typed, recorded, or other graphic material, or ESI (as defined below), of any kind and nature, including all drafts and transcriptions thereof, however produced or reproduced, and including but not limited to accounting materials, accounts, agreements, analyses, appointment books, books of account, calendars, catalogs, checks, communications (as defined herein), computer data, computer disks, contracts, correspondence, date books, diaries, diskettes, drawings, email messages, faxes, guidelines, instructions, inter-office communications, invoices, letters, logs, manuals, memoranda, minutes, notes, opinions, payments, plans, policies, procedures, purchase confirmations, receipts, records, regulations,

3

reports, rules, sound recordings, spreadsheets, statements, studies, surveys, tickets, timesheets, trade records, vouchers, word processing materials (however stored or maintained), and all other means by which information is stored for retrieval in fixed form.

> **Objection**: DFA objects to this definition to the extent it attempts to impose a burden on DFA greater than that required by Rules 26(b)(1) and 34 and seeks information for which the burden of searching and producing such documents outweighs any potential benefit. DFA will apply the definition of "document" described in Rule 34(a) and produce information that falls within the scope of Rule 26(b).

(i)     "ESI" means information created, manipulated, communicated, stored, or utilized in digital form. ESI includes, without limitation, data stored on or in computer servers, computer hard drives, computer desktops, laptops, handheld or tablet computers, portable digital media, backup media, CD-ROMs, DVD-ROMs, floppy disks, non-volatile memory including flash memory devices, external hard drives, personal digital assistants (such as Palm, iPhone, or Blackberry devices), cell phones, electronic voicemail systems, text messages, instant messages, e-mails and attachments to e-mails, or any device or medium capable of storing data in any format.

(j)     "DFA" refers to the named Plaintiff, its subsidiaries, and any entity controlled by DFA.

(k)     "HHCSM" refers to high-heat condensed skim milk, also sometimes known as "pasteurized Grade A condensed skim milk – high heat."

(l)     "Complaint" refers to the Second Amended Complaint filed in this action on July 14, 2025.

(m)     The terms "regarding" and "relating to" shall be read and applied as interchangeable and shall be construed in the broadest sense permitted, to mean discussing, supporting, describing, concerning, regarding, with regard to, relating to, referring to, pertaining to, containing, analyzing, evaluating, studying, recording, memorializing, reporting on,

4

commenting on, reviewed in connection or in conjunction with, evidencing, setting forth, contradicting, refuting, considering, recommending, or constituting, in whole or in part.

(n)    The language of the Requests shall be read liberally, so as to be inclusive rather than exclusive, and in particular:  (i) the use of the singular shall be deemed to include the plural and vice versa, and the use of one gender shall include the other; (ii) the  terms  "and" as well  as "or" shall  be  construed  disjunctively  or conjunctively as necessary to bring within the scope of a Request all documents that might otherwise be construed as outside its scope; (iii) the present tense includes the past and future tenses, and vice versa; (iv) the terms "any" or "all" shall mean "any and all," "each and every," and "anyone and everyone"; and (v) "include," "includes," and "including" shall  mean  "including  but  not  limited to."

**Objection: DFA objects to this definition as vague and confusing, leaving DFA to speculate as to its proper application. DFA will respond to discovery requests as drafted.**

## REQUESTS FOR PRODUCTION

1.    Documents referenced in DFA's Answers to Westrock's First Interrogatories.

**RESPONSE: DFA objects to this Request to the extent it seeks documents protected by the attorney-client privilege, work product doctrine, and/or any other applicable privilege or protection, including agreements with third parties that are subject to confidentiality or other non-disclosure protections or provisions.**

**DFA will produce nonprivileged, responsive documents relied on to prepare DFA's answers to Defendant Westrock's First Interrogatories.**

2.    The Joint Venture Agreements referenced in Paragraph 16 of the Complaint and any addendums, revisions, modifications, or amendments thereto.

**RESPONSE: DFA objects to this Request as overly broad, including because it far exceeds the relevant time period of this litigation and seeks "any addendums, revisions, modifications, or amendments" to the Joint Venture Agreements regardless of the nature, scope, date, or purpose of those amendments. Such a request is facially overbroad in both time and scope. It is unclear what relevance, if any, DFA's Joint Venture Agreements with third parties—in their entirety—have to the claims and defenses at issue, much less every addendum, revision, modification, or amendment thereto. DFA has worked with the Joint Venture for over thirty years. In Paragraph**

5

**16, DFA notes that it entered into confidential packing Agreements with a Joint Venture to manufacture, market, sell, and distribute ready-to-drink coffee and energy beverages. These Agreements include non-disclosure and confidentiality provisions with entities that are not parties to the litigation. Accordingly, DFA also objects to this Request to the extent it seeks information subject to non-disclosure or confidentiality agreements with third parties, including because such disclosure would violate DFA's contractual obligations and the privacy and confidentiality interests of third parties. To the extent discovery confirms that Defendants improperly took, disclosed, and/or used confidential information subject to the Joint Venture Agreements referenced in Paragraph 16 and that is relevant to the claims and defenses at issue, DFA will consult with the Joint Venture to request authorization to identify and produce the relevant provisions of the Agreements that are applicable to the documents and information taken by Defendants and that are sufficient to show that such information was considered highly confidential and protected under those Agreements, and to provide any and all required notice and an opportunity for any party to those Agreements to object to such disclosure as appropriate. To the extent this Request seeks documents and information relevant to DFA's damages calculation and that is the subject of expert testimony, DFA will produce that information consistent with its obligations under the Federal Rules of Civil Procedure and any scheduling order entered by the Court.**

3.    Communications with the parties to the Joint Venture Agreements referenced in Paragraph 16 of the Complaint and relating to:

    a.  The terms of said agreements or the termination, non-renewal, or cancellation of said agreements;

    b.  The extension or renewal of said agreements;

    c.  DFA's performance under said agreements;

    d.  The age, capabilities, limitations, or obsolescence of DFA's manufacturing facility(ies) or the equipment therein;

    e.  Ownership of the manufacturing equipment located at any of DFA's manufacturing facility(ies);

    f.  Maintenance of the manufacturing equipment located at any of DFA's manufacturing facility(ies);

    g.  Research and development of new products;

6

h.  Use of non-dairy substitutes for milk;

i.  the "Confidential Information," "Confidential Trade Secret Information," and "confidential pricing information" identified in your Answers to Interrogatory Nos. 1, 2, and 3; or

j.  Westrock.

**RESPONSE: DFA objects to this Request as overly broad and unduly burdensome, including because it is unlimited in time, overbroad in scope, and seeks information that is not relevant to the claims or defenses at issue. Every communication at any point in time with the parties to the Joint Venture Agreements referenced in Paragraph 16, and who are not parties to this litigation, including any communication regarding the terms of the Agreements, termination, non-renewal, cancellations, extensions, DFA's performance, DFA's manufacturing facilities and/or equipment, research and development, the use of non-dairy substitutes for milk, or confidential information is not relevant to the claims and defenses at issue, nor is it proportional to the needs of the case. To the extent Defendant's Request seeks documents and information relevant to DFA's damages calculation and that is the subject of expert testimony, DFA objects to the Request as premature and states that it will produce that information consistent with its obligations under the Federal Rules of Civil Procedure and any scheduling order entered by the Court. This Request is facially overbroad, including because it fails to make any reasonable effort to tailor the request to the facilities, the products, or the business segments at issue in this litigation and that are relevant to the claims and defenses. DFA has done business with the Joint Venture for over thirty years. DFA entered into confidential packing agreements with a joint venture to manufacture, market, sell, and distribute ready-to-drink coffee and energy beverages. These agreements include non-disclosure and confidentiality provisions with entities that are not parties to the litigation. Accordingly, DFA also objects to this Request to the extent it seeks documents and information subject to non-disclosure or confidentiality agreements with third parties, including because such disclosure would violate DFA's contractual obligations and the privacy and confidentiality interests of third parties. DFA further objects to this Request to the extent it seeks documents discussing or reflecting highly confidential and/or trade secret information, including information related to DFA's research and development of new products and the very information DFA seeks to protect through this litigation. DFA also objects to this Request to the extent it can be read to request documents or communications protected by the attorney-client privilege, work product doctrine, and/or any other applicable privilege.**

**DFA is willing to meet and confer to discuss a more reasonable scope to this Request.**

4.      Documents or communications relating to the pricing of products sold by DFA

pursuant to the Joint Venture Agreements referenced in Paragraph 16 of the Complaint.

> **RESPONSE: DFA objects to this Request as overly broad and unduly burdensome, including because it is unlimited in time and seeks information that is not relevant to the claims or defenses of the case. Every document or communication relating to the pricing of products sold by DFA pursuant to the Joint Venture Agreements referenced in Paragraph 16, which span more than 30 years, is not relevant to the claims or defenses at issue. Nor is it proportional to the needs of the case. DFA further objects to this Request to the extent it can be read to request documents or communications protected by the attorney-client privilege, work product doctrine, and/or any other applicable privilege. Additionally, disclosure of DFA's pricing information to nonparties would directly violate DFA's nondisclosure obligations under the Agreements. DFA, therefore objects on these additional grounds.**

5.      Documents containing any opinion or assessment of the longevity or future of the

Joint Venture Agreements referenced in Paragraph 16 of the Complaint.

> **RESPONSE: DFA objects to this Request as overly broad and unduly burdensome as it is unlimited in time. DFA further objects to this Request to the extent it can be read to request documents or communications protected by the attorney-client privilege, work product doctrine, and/or any other applicable privilege. Based on DFA's reasonable investigation to date, DFA is not aware of any documents responsive to this Request.**

6.      Documents relating to DFA's inability or unwillingness to service or meet the

needs, desires, or wishes of the parties to the Joint Venture Agreements referenced in Paragraph

16 of the Complaint.

> **RESPONSE: DFA objects to this Request as overly broad and vague and confusing because it is unlimited in time and seeks any document that in any way "relate[es]" to DFA's "inability or unwillingness" to service the needs, desires, or wishes of the parties to the Joint Venture Agreements. It is unclear what Defendant means by "inability or unwillingness" and "desires" and "wishes" of the parties, all of which are undefined and subjective.**
>
> **DFA will undertake a reasonable search and will run search terms on agreed upon custodians, and work diligently with Defendants to develop appropriate search terms for those custodians, to identify and  produce responsive, non-privileged documents between March 1, 2020, and the filing of the Complaint that reflect DFA's alleged failure to service or meet its obligations under the Joint Venture Agreements reflected in Paragraph 16.**

7. Documents relating to the investigation conducted by DFA, as referenced in Paragraph 29 of the Complaint.

**RESPONSE: DFA objects to this Request as vague and confusing. Paragraph 29 does not reference any investigation. To the extent, Defendant seeks documents "relating to" the investigation referenced in Paragraph 31, DFA objects to the Request on the basis that it seeks documents protected by the attorney-client privilege, work product doctrine, and/or any other applicable privileges and doctrines.**

**DFA's internal investigation was conducted at the direction of and in coordination with legal counsel. All documents related to the investigation conducted by DFA are privileged.**

8. Documents relating to the allegation in Paragraph 39 of the Complaint that Westrock "recruited Defendants Slagle and Bethurem for the specific purpose of obtaining DFA's confidential pricing information for the products manufactured by DFA at the Greene and Texas County facilities."

**RESPONSE: DFA objects to this Request as overly broad and vague as it seeks any document that in any way "relate[s]" to the allegation in Paragraph 39 of the Complaint. DFA further objects to this Request to the extent it can be read to request documents or communications protected by the attorney-client privilege, work product doctrine, and/or any other applicable privilege or protection.**

**DFA will undertake a reasonable search and will run search terms on agreed upon custodians, and work diligently with Defendants to develop appropriate search terms for those custodians, to identify and produce responsive, non-privileged documents sufficient to show that Westrock recruited Defendants Bethurem and Slagle for the purpose of obtaining DFA's confidential pricing information for the products manufactured by DFA at the Greene and Texas County facilities.**

9. Documents relating to the allegation in Paragraph 41 of the Complaint that "Defendants Slagle and Bethurem have…disclosed the confidential pricing information to Westrock."

**RESPONSE: DFA objects to this Request as overly broad and vague to the extent it seeks any document that in any way "relate[s]" to the allegation in Paragraph 41 of the Complaint. DFA further objects to this Request to the extent it can be read to request documents or communications protected by the attorney-client privilege, work product doctrine, and/or any other applicable privilege or protection.**

9

**DFA will undertake a reasonable search and will run search terms on agreed upon custodians, and work diligently with Defendants to develop appropriate search terms for those custodians, to identify and produce responsive, non-privileged documents sufficient to show that Defendants Bethurem and Slagle disclosed DFA's confidential pricing information to Westrock.**

10.    Documents relating to the allegation in Paragraphs 48, 57, and 66 of the Complaint that Westrock "used improper means to acquire knowledge of DFA's Confidential Trade Secret Information."

**RESPONSE: DFA objects to this Request as overly broad and vague to the extent it seeks any document that in any way "relate[s]" to the allegations in Paragraphs 48, 57, and 66 of the Complaint that Westrock used improper means to acquire knowledge of DFA's Confidential Trade Secret Information. DFA further objects to this Request to the extent it can be read to request documents or communications protected by the attorney-client privilege, work product doctrine, and/or any other applicable privilege or protection.**

**DFA will undertake a reasonable search and will run search terms on agreed upon custodians, and work diligently with Defendants to develop appropriate search terms for those custodians, to identify and produce responsive, nonprivileged documents showing that Westrock used improper means to acquire knowledge of DFA's Confidential Trade Secret Information, including copies of DFA's Non-Disclosure, Ethics, and Conflict of Interest Agreements, signed by all Individual Defendants, acknowledging their duties and obligations not to disclose DFA confidential information to others unless authorized, and the cease and desist letter DFA sent to Westrock.**

11.    Documents relating to the allegation in Paragraphs 49, 58, and 67 of the Complaint that Westrock "knew or had reason to know that the Confidential Trade Secret Information was acquired by improper means and/or derived through persons who owed a duty to DFA to maintain its secrecy."

**RESPONSE: DFA objects to this Request as overly broad and vague to the extent it seeks any document that in any way "relate[s]" to the allegation in Paragraphs 49, 58, 67 of the Complaint. DFA further objects to this Request to the extent it can be read to request documents or communications protected by the attorney-client privilege, work product doctrine, and/or any other applicable privilege or protection.**

**DFA will undertake a reasonable search and will run search terms on agreed upon custodians, and work diligently with Defendants to develop appropriate search terms for those custodians, to identify and produce responsive, nonprivileged documents**

10

**showing that Westrock knew or had reason to know that the Confidential Trade Secret Information was acquired by improper means and/or derived through persons who owed a duty to DFA to maintain its secrecy, including copies of DFA's Non-Disclosure, Ethics, and Conflict of Interest Agreements, signed by all Individual Defendants, acknowledging their duties and obligations not to disclose DFA confidential information to others unless authorized, and the cease and desist letter DFA sent to Westrock.**

12.    Documents showing that Westrock acquired, used, or disclosed the "Confidential Information", "Confidential Trade Secret Information", and "confidential pricing information" identified in your Answers to Interrogatory Nos. 1, 2, and 3.

**RESPONSE: DFA incorporates its objections to Interrogatory Nos. 1-3 as though fully stated herein, including to the extent this request seeks documents reflecting Confidential and Trade Secret Information improperly taken and/or disclosed, acquired, or used by Defendants, the full extent of which is the subject of ongoing discovery and the knowledge of which is in the possession, custody, and control of Defendants, not DFA. Defendants – not DFA – are the best source for providing this information. DFA refers Westrock to the October 22, 2024 letter acknowledging Westrock's possession of DFA's confidential information. DFA further agrees to undertake a reasonable search and run search terms on agreed upon custodians, and work diligently with Defendants to develop appropriate search terms for those custodians, to identify and produce responsive, nonprivileged documents showing that Defendants acquired, used, and/or disclosed DFA's Confidential and/or Trade Secret Information.**

13.    A copy of DFA's organization chart since January 1, 2020.

**RESPONSE: DFA does not have any documents responsive to this request.**

14.    Documents or communications with any third party, excluding counsel, regarding Westrock or this lawsuit.

**RESPONSE: DFA objects to this Request as overly broad, vague, and unduly burdensome as it seeks documents or communications with any third party over an unlimited period of time regarding Westrock or this lawsuit regardless of their relevance to the claims or defenses of this case. Such a request is facially overbroad and not proportional to the needs of the case. Westrock is a competitor, and not every communication is relevant. DFA further objects to this request to the extent it can be read as seeking documents protected by the attorney-client privilege or work product doctrine.**

**DFA is willing to meet and confer on the scope of this request.**

15.    Notes of unwritten communications with any third party, excluding counsel, regarding Westrock or this lawsuit.

**RESPONSE:  DFA objects to this Request as overly broad and vague, as it seeks notes of any unwritten communication with any third party over an unlimited period of time regarding Westrock or this lawsuit regardless of their relevance to the claims or defenses of this case. Such a request is facially overbroad and not proportional to the needs of the case. Westrock is a competitor, and not every communication is relevant. DFA further objects to this request to the extent it can be read as seeking documents protected by the attorney-client privilege or work product doctrine.**

**DFA is willing to meet and confer on the scope of this request.**

16.    Internal communications regarding Westrock since January 1, 2020.

**RESPONSE: DFA objects to this Request as overly broad, vague, and unduly burdensome as it seeks internal communications regarding Westrock regardless of the nature or subject matter of the communications or their relevance to the claims or defenses of this case. Such a request is facially overbroad and not proportional to the needs of the case. DFA further objects to this Request as overly broad to the extent it seeks documents dating back to January 1, 2020. Westrock did not announce its Conway, Arkansas facility until December 16, 2022. DFA further objects to this Request to the extent it can be read to request documents protected by the attorney-client privilege, work product doctrine, and/or any other applicable privilege or protection.**

**DFA will undertake a reasonable search and will run search terms on agreed upon custodians, and work diligently with Defendants to develop appropriate search terms for those custodians, to identify and produce responsive, nonprivileged documents between December 1, 2022 and the filing of the Complaint regarding Westrock and its improper acquisition of DFA information and materials, attempt to recruit DFA employees, and attempt to compete with DFA or as otherwise relevant to the claims and defenses of this case.**

17.    Notes of unwritten communications regarding Westrock since January 1, 2020.

**RESPONSE: DFA objects to this Request as overly broad, vague, and unduly burdensome to the extent it seeks notes of unwritten communications regarding Westrock over a nearly six-year period, regardless of the nature of the communications or their relevance to the claims or defenses of this case. Such a request is facially overbroad and not proportional to the needs of the case. DFA further objects to this Request to the extent it seeks documents dating back to January 1, 2020.. Westrock did not announce its Conway, Arkansas facility until December 16, 2022. DFA further objects to this Request as vague and confusing as "notes of unwritten communications" is undefined. DFA additionally objects to this Request to the extent it can be read to request documents or communications protected by the**

12

**attorney-client privilege and/or work product doctrine, and/or any other applicable privilege or protection. DFA will interpret "notes of unwritten communications" to mean notes separate from email or letters.**

**DFA will undertake a reasonable search and will run search terms on agreed upon custodians, and work diligently with Defendants to develop appropriate search terms for those custodians, to identify and produce responsive, nonprivileged notes of unwritten communications between December 1, 2022 and the filing of the Complaint regarding Westrock and its improper acquisition of DFA information and materials, attempt to recruit DFA employees, and attempt to compete with DFA or as otherwise relevant to the claims and defenses of this case.**

18.    Communications between DFA and Westrock since January 1, 2020, including

communications regarding the purchase or potential purchase of HHCSM from DFA.

**RESPONSE:  DFA objects to this Request as overly broad and disproportional to the needs of the case given the factors in Rule 26, including the burden of identifying the requested information compared to the relevance of the requested information, if any, to the claims and defenses and the parties' relative and equal access to the information. Westrock announced its Conway, Arkansas facility in December 16, 2022.**

**DFA will undertake a reasonable search and will run search terms on agreed upon custodians, and work diligently with Defendants to develop appropriate search terms for those custodians, to identify and produce responsive communications with Westrock between December 1, 2022, and the filing of the Complaint.**

19.    Notes of unwritten communications between DFA and Westrock since January 1,

2020.

**RESPONSE:  DFA objects to this Request as overly broad, unduly burdensome, and disproportionate to the needs of the case to the extent it seeks notes of any unwritten communication between DFA and Westrock over the last six years. DFA further objects based on the proportionality factors set forth in Rule 26, including the burden of identifying the requested information compared to the relevance of the requested information, outweighs its relevance, if any, to the claims and defenses. Westrock did not announce its Conway, Arkansas facility until December 16, 2022. DFA further objects to this Request as vague and confusing as "notes of unwritten communications" is undefined. DFA further objects to this request to the extent it can be read to request documents protected by the attorney-client privilege and/or work product doctrine, and/or any other applicable privilege or protection. DFA will interpret "notes of unwritten communications" to mean notes separate from email or letters.**

13

**DFA will undertake a reasonable search and will run search terms on agreed upon custodians, and work diligently with Defendants to develop appropriate search terms for those custodians, to identify and produce nonprivileged, responsive notes of unwritten communications with Westrock between December 1, 2022, and the filing of the Complaint.**

20.    Documents relating to any DFA meeting during which Westrock, the allegations in the Complaint, or this litigation were discussed, including but not limited to meeting minutes, handouts, attendance records, and presentations.

**RESPONSE: DFA objects to this Request as overly broad, unduly burdensome, and vague. This request is unlimited in time, seeks any document that "relate[s]" to any DFA meeting where Westrock or the lawsuit was discussed in any context, including contexts unrelated to this lawsuit. Such a request is facially overbroad and not proportional to the needs of the case, as the burden of searching for and producing this information far outweighs any potential benefit. Every document reflecting any meeting minutes, handouts, attendance records, or presentations from any meeting at any point in time that in any way discussed Westrock or this litigation, regardless of the scope or nature of the discussions, is not relevant to the claims and defenses. DFA further objects to this Request as seeking documents protected by the attorney-client privilege and/or work product doctrine, and/or other applicable privileges and protections. DFA will produce documents responsive to other, more appropriately tailored requests, as set forth herein.**

21.    Documents and communications exchanged between DFA and the "whistleblower" referenced in Paragraphs 23-29 of the Complaint.

**RESPONSE:**

22.    DFA's bylaws in effect since January 1, 2020.

**RESPONSE: DFA objects to this request as overbroad to the extent it seeks DFA's bylaws since January 1, 2020. DFA further objects because DFA's bylaws are not relevant to the claims or defenses of the case.**

14

23.    Documents regarding layoffs or reductions in force since January 1, 2020 at the

facilities referenced in Paragraph 15 of the Complaint.

> **RESPONSE: DFA objects to this Request as overly broad and unduly burdensome to the extent it seeks any document regarding any layoff or reduction in force since January 1, 2020, at the Greene and Texas County, MO facilities referenced in Paragraph 15 of the Complaint, regardless of the nature or circumstances of such layoff or reduction. Such information is neither relevant to the claims or defenses or proportional to the needs of the case. DFA further objects to this Request to the extent it can be read to request documents or communications protected by the attorney-client privilege, work product doctrine, and/or any other applicable privilege.**
>
> **DFA will undertake a reasonable search and will run search terms on agreed upon custodians, and work diligently with Defendants to develop appropriate search terms for those custodians, to identify and produce responsive, nonprivileged documents sufficient to show  reductions in force, as DFA understands that undefined term, at the Greene and Texas County facilities between December 1, 2022, and the filing of the Complaint.**

24.    Documents regarding the closure of any line of processing, bottling, or

manufacturing since January 1, 2020 at the facilities referenced in Paragraph 15 of the Complaint.

> **RESPONSE:  DFA objects to this Request to the extent it seeks information protected by the attorney-client privilege and/or work product doctrine, and/or any other applicable privilege or protection. DFA will undertake a reasonable search and will run search terms on agreed upon custodians, and work diligently with Defendants to develop appropriate search terms for those custodians, to identify and produce responsive, nonprivileged documents sufficient to show the closure of any line of processing, bottling, or manufacturing related to retort and ready-to-drink coffee products between January 1, 2020, and the filing of the Complaint at the Springfield and Cabool, MO facilities.**

25.    Documents regarding the conversion or modification of any line of processing,

bottling, or manufacturing since January 1, 2020 at the facilities referenced in Paragraph 15 of the

Complaint.

> **RESPONSE:  DFA objects to this Request as overly broad, unduly burdensome, and not proportional to the needs of the case to the extent it seeks documents regarding any "conversion," or any "modification" of any line of processing, bottling, or manufacturing since January 1, 2020, regardless of the nature or extent of the modification or whether that modification, however slight, has any relevance to the claims or defenses at issue.**

**DFA will undertake a reasonable search and will run search terms on agreed upon custodians, and work diligently with Defendants to develop appropriate search terms for those custodians, to identify and produce responsive, nonprivileged documents regarding the conversion of any line of processing, bottling, or manufacturing related to retort and ready-to-drink coffee products between January 1, 2020, and the filing of the Complaint at the Springfield and Cabool, Missouri facilities.**

26.    Documents sufficient to show the products manufactured by DFA at any facility in furtherance of the Joint Venture Agreements referenced in Paragraph 16 of the Complaint, month-by-month, from the inception of said agreement through the present, including the product manufactured and the volume.

**RESPONSE: DFA objects to this Request as overly broad, unduly burdensome, and vague, including because it is virtually unlimited in time and seeks information on a month-by-month basis from the inception of the Joint Venture Agreements to present, including the product manufactured and the volume. DFA has done business with the Joint Venture for over 30 years. DFA further objects to this Request to the extent it appears to seek information regarding any product manufactured at *any* DFA facility that in any way can be construed as a product manufactured "in furtherance" of the Joint Venture Agreements.**

**DFA will produce documents sufficient to show the products manufactured by DFA at the Springfield and Cabool, MO facilities and that Westrock also manufactures as they are kept int eh usual course of business and in which they are ordinarily maintained.**

27.    With respect to any document, thing, or information requested by these requests for production or Westrock's interrogatories that is unavailable because records have been lost or destroyed, please produce all documents and things regarding the loss or destruction.

**RESPONSE: DFA objects to this Request as it attempts to impose a burden greater than that required by the applicable Rules of Civil Procedure. Document collection and review is ongoing. To the extent DFA identifies any nonprivileged and responsive documents that have been destroyed or lost, or that are otherwise not capable of being produced, those documents will be identified consistent with DFA's obligations. DFA further objects to this Request to the extent it seeks documents protected by the attorney-client privilege and/or work product doctrine. DFA is not presently aware of any documents that are unavailable because records have been lost or destroyed outside of DFA's standard retention practices and procedures prior to the initiation of this litigation.**

16

28.     All forensic images of the flash drives returned to DFA by Westrock on or about

October 22, 2024.

**RESPONSE: DFA objects to this Request to the extent it can be read to request documents or communications protected by the attorney-client privilege, work product doctrine, and/or any other applicable privilege. All forensic images were created at the direction of counsel and in anticipation of litigation. DFA further objects to this Request to the extent it seeks copies of highly confidential and trade secret information from DFA. DFA will provide a list of documents on the flash drives returned by DFA to Westrock.**

29.     Any report, analysis, or findings provided to DFA relating to an inspection of the

flash drives returned to DFA by Westrock on or about October 22, 2024.

**RESPONSE: DFA objects to this Request because it seeks documents protected by the attorney-client privilege and work product doctrine.**

**Westrock returned the flash drives to DFA in response to a September 10, 2024 cease-and-desist letter requesting the immediate return of DFA property.**

**DFA's analysis and findings relating to its inspection of the flash drives returned to DFA by Westrock on or about October 22, 2024, was completed in anticipation of litigation and at the direction of counsel. DFA will provide a list of documents on the flash drives returned by DFA to Westrock.**

30.     All forensic images of computers, smart phones, external hard drives, USB drives

or other devices capable of storing electronic data used by the Individual Defendants during their

employment with DFA.

**RESPONSE: DFA objects to this Request as overly broad because it is unlimited in time and to the extent it seeks all forensic images of all computers, smart phones, external hard drives, USB drives, or other devices capable of storing electronic data and used by the Individual Defendants during their employment with DFA, regardless of when those images were taken, the reason for the image, or whether the information on any such image contains information that is relevant to the claims or defenses at issue in the litigation or is otherwise protected. Further, this Request, which contains no meaningful subject matter limitations, fails to identify the documents it seeks with reasonable particularity, as required by Rule 34. DFA also objects to this request to the extent it can be read to request documents or communications protected by the attorney-client privilege, work product doctrine, and/or any other applicable privilege. All forensic images were created at the direction of counsel and in anticipation of litigation. DFA further objects to this Request to the extent it is duplicative of other, more tailored requests. DFA will**

**produce nonprivileged documents to the extent those documents are responsive to other more tailored requests and relevant to the claims and defenses at issue.**

31. Any documents relating to or reflecting reports, analyses, or findings provided to DFA relating to the inspection of any computers, smart phones, external hard drives, USB drives, or other devices capable of storing electronic data used by any of the Individual Defendants during their employment with DFA.

**RESPONSE: DFA objects to this Request as overly broad because it is virtually unlimited in time and to the extent it seeks all documents relating to or in any way reflecting any reports, analyses, or findings provide to DFA relating to the inspection of any computer, smart phone, external hard drive, USB drive, or other devices capable of storing electronic data used by the Individual Defendants at any point during their employment with DFA, regardless of the context or circumstances surrounding the making of such report or the transmission of such analyses or findings. Further, this Request, which contains no meaningful subject matter limitations, fails to identify the documents it seeks with reasonable particularity, as required by Rule 34. DFA also objects to this request to the extent it can be read to request documents or communications protected by the attorney-client privilege, work product doctrine, and/or any other applicable privilege. All documents regarding any analyses or findings of the inspection of the Individual Defendants' devices, and as relevant to the claims and defenses at issue in this litigation, were conducted as part of an internal investigation at the direction of DFA legal counsel. DFA further objects to this request to the extent it is duplicative of other, more tailored requests. DFA will produce nonprivileged documents to the extent those documents are responsive to other more tailored requests and relevant to the claims and defenses at issue.**

32. Any documents relating to exit interviews for the Individual Defendants.

**RESPONSE: DFA objects to this Request to the extent it can be read to request documents or communications protected by the attorney-client privilege, work product doctrine, and/or any other applicable privilege. Based on DFA's reasonable investigation to date, DFA is not aware of any documents responsive to this Request.**

33. The agreements entered into between DFA and the individuals listed in DFA's Answers to Interrogatory Nos. 17 and 18.

**RESPONSE: DFA objects to this request as overly broad to the extent it seeks any agreement between DFA and any individual identified in DFA's Answers to Interrogatory Nos. 17 and 18, regardless of when that agreement was entered, the nature of the agreement, or its relevance to the claims or defenses at issue. DFA expressly incorporates its objections to Interrogatory Nos. 17 and 18 as if fully set**

18

**forth herein. Further, as noted in DFA's Interrogatory Answers, DFA requires every employee, to sign confidentiality and/or non-disclosure agreements to protect DFA's confidential, proprietary, pricing, and trade secret information.**

**DFA will produce copies of the Individual Defendants' Non-Disclosure, Ethics, and Conflicts of Interest Statements and any other non-disclosure or confidentiality agreements entered by the specific individuals expressly identified in DFA's Answers to Interrogatory Nos. 17 and 18.**

34.    Documents depicting the "Confidential Information," "Confidential Trade Secret Information," and "confidential pricing information" identified in your Answers to Interrogatory Nos. 1, 2, and 3.

**RESPONSE: DFA objects to this Request as overly broad, including because it is unlimited in time and seeks documents in any way depicting the Confidential and Trade Secret Information identified in Interrogatory Nos. 1-3 and therefore suffers from the same defects as those requests, including the fact that the full scope of the Confidential and Trade Secret information improperly taken by Defendants and acquired, disclosed, or used is information that is more properly within the unique knowledge and possession, custody, and control of Defendants and that is the subject of ongoing discovery. DFA expressly incorporates by references its objections to Interrogatory Nos. 1-3 as if fully set forth herein.  DFA further objects to this Request to the extent it seeks copies of the very information DFA seeks to protect through this lawsuit and without the protections of a mutually agreeable protective order and to the extent it seeks documents protected by the attorney-client privilege and/or work-product doctrine or other applicable privileges or protections. DFA will produce a list of sufficient to identify the Confidential and Trade Secret information at issue and improperly taken, acquired, used, and/or disclosed by Defendants.**

35.    Documents relating to the measures taken by DFA to maintain the secrecy of the "Confidential Information," "Confidential Trade Secret Information," and "confidential pricing information" identified in your Answers to Interrogatory Nos. 1, 2, and 3.

**RESPONSE: DFA objects to this Request as overly broad, including because it is unlimited in time, contains no meaningful subject matter limitations, and seeks documents in any way relating to the measures taken by DFA to maintain the secrecy of the Confidential and Trade Secret Information identified in Interrogatory Nos. 1-3. This request, therefore, suffers from the same defects as those Interrogatories, including the fact that the full scope of the Confidential and Trade Secret information improperly taken by Defendants and acquired, disclosed, or used is information that is more properly within the unique knowledge and possession, custody, and control of Defendants and that is the subject of ongoing discovery. DFA expressly incorporates by references its objections to Interrogatory Nos. 1-3 as if fully set forth**

19

**herein. DFA further objects to this Request to the extent it seeks information protected by the attorney-client privilege and/or work product doctrine, and/or any other applicable privilege or protection. Additionally, a request for "all measures" taken by DFA to maintain secrecy is vague and ambiguous and could be read to encompass a multitude of scenarios related to the daily tasks and assignments necessary to carry out daily tasks and operations.**

**DFA requires every employee to sign an Employee Non-Disclosure, Ethics, and Conflict of Interest Agreement to maintain the secrecy of confidential information, confidential trade secret information, and confidential pricing information, representative copies of which DFA has agreed to produce in response to other requests.**

**DFA will undertake a reasonable search to identify and produce responsive, nonprivileged documents sufficient to show measures taken by DFA to maintain the secrecy of the Confidential Information, Confidential Trade Secret Information, and Confidential Pricing Information at issue, to the extent such documents exist.**

36.    Documents regarding the allegation in Paragraph 23 of the Complaint that "Westrock is directly soliciting the joint venture to manufacture the identical products that DFA is currently manufacturing," including but not limited to the sources of this information, communications with the joint venture customer, and DFA's internal communications regarding the alleged solicitation.

**RESPONSE: DFA objects to this Request as vague and overly broad to the extent it seeks any document regarding the allegation that Westrock is soliciting the joint venture to manufacture the identical products that DFA is currently manufacturing, including various independent and unrelated documents. DFA further objects to this request to the extent it seeks documents protected by the attorney-client privilege, work product doctrine, and/or any other applicable privilege. DFA will undertake a reasonable search and will run search terms on agreed upon custodians, and work diligently with Defendants to develop appropriate search terms for those custodians, to identify and produce responsive, nonprivileged documents reflecting that Westrock was directly soliciting the joint venture to manufacture the identical products that DFA is currently manufacturing.**

37.     Documents related to the allegation at Paragraph 27 that the "Confidential Trade Secret Information included information that DFA was to hold in strictest confidence pursuant to its Joint Venture Agreements."

**RESPONSE: DFA objects to this Request as vague and ambiguous to the extent it seeks documents "related to" DFA's allegation that certain Confidential Trade Secret Information at issue is subject to protection under the Joint Venture Agreements referenced in the Complaint. DFA further objects to this Request to the extent it seeks documents and information subject to non-disclosure or confidentiality agreements with third parties, the disclosure of which would violate DFA's contractual obligations and the privacy and confidentiality interests of others. To the extent discovery confirms that Defendants improperly took, acquired, disclosed, and/or used confidential information subject to the Joint Venture Agreements and that is relevant to the claims and defenses at issue, DFA will consult with the Joint Venture to request authorization to identify and produce the relevant provisions of the Agreements that are applicable to the documents and information taken by Defendants and that are sufficient to show that such information was considered highly confidential and protected under those Agreements, and to provide any and all required notice and an opportunity for any party to those Agreements to object to such disclosure as appropriate.**

38.     Communications between DFA and the Individual Defendants regarding DFA's guidelines, policies, procedures, or rules relating to confidential or trade secret information.

**RESPONSE: DFA objects to this Request to the extent it is unlimited in time, seeking communications between DFA and the Individual Defendants at any point in time regarding DFA's guidelines, policies, procedures, or rules relating to confidential or trade secret information, regardless of the context or reason for those communications. DFA further objects to this Request to the extent it seeks documents protected by the attorney-client privilege, work product doctrine, and/or any other applicable privilege. DFA will produce copies of the Individual Defendants' Non-Disclosure, Ethics, and Conflicts of Interest Statements and applicable non-competition agreements. DFA will also produce copies of Individual Defendants Izdepski's and Isakson's separation agreements. Additionally, DFA refers Westrock to DFA's September 10, 2024 Cease and Desist letter. DFA also agrees to undertake a reasonable search and will run search terms on agreed upon custodians, and work diligently with Defendants to develop appropriate search terms for those custodians, to identify and produce responsive, nonprivileged communications between DFA and the Individual Defendants regarding DFA's guidelines, policies, procedures, or rules for how to treat DFA's confidential and/or trade secret information between January 1, 2021, and the filing of the Complaint.**

39.     Drafts of any document identified as "Confidential Information," "Confidential Trade Secret Information," or "confidential pricing information" identified in your Answers to Interrogatory Nos. 1, 2, and 3.

> **RESPONSE: DFA objects to this Request as overly broad and unduly burdensome, including because it is unlimited in time and seeks documents that are not relevant to the claims or defenses at issue. Drafts of any documents identified as Confidential and/or Trade Secret Information in response to Interrogatory Nos. 1-3 are not relevant to the claims or defenses at issue. Further, such a request would require DFA to search for and review all historical versions and edits of thousands of documents, including but not limited to emails, attachments, and system-generated versions. It would require a manual and/or forensic review of all document repositories, backup systems, and email servers, including metadata and version histories, imposing a significant and disproportionate burden in terms of time, cost, and resources. Defendants Izdepski, Isakson, and Huckabay, alone, downloaded and took approximately 7,095 documents without authorization. To identify and produce all drafts or prior versions of these documents would require an exhaustive search through multiple document management systems, backup files, and potentially archived or deleted materials, further compounding the burden. The burden and expense of searching for all drafts greatly outweighs any potential benefit. Additionally, this request suffers from the same defects as Interrogatories Nos. 1-3, including the fact that the full scope of the Confidential and Trade Secret information improperly taken by Defendants and acquired, disclosed, or used is information that is more properly within the unique knowledge and possession, custody, and control of Defendants and that is the subject of ongoing discovery. DFA, therefore, expressly incorporates by references its objections to Interrogatory Nos. 1-3 as if fully set forth herein. DFA further objects to the extent this request seeks information protected by the attorney-client privilege, work product doctrine, or any other applicable privilege or protection.**

40.     Documents sufficient to show when any item identified as "Confidential Information," "Confidential Trade Secret Information," or "confidential pricing information" identified in your Answers to Interrogatory Nos. 1, 2, and 3 was first developed and put into use.

> **RESPONSE: DFA objects to this Request as overly broad, vague, and ambiguous, including because it is unlimited time and seeks documents sufficient to show when any items identified in DFA's Answers to Interrogatory Nos. 1-3 was "first developed" and "put to use," forcing DFA to speculate as to the intended scope and nature of the information. Additionally, this request suffers from the same defects as Interrogatories Nos. 1-3, including the fact that the full scope of the Confidential and Trade Secret information improperly taken by Defendants and acquired, disclosed, or used is information that is more properly within the unique knowledge and possession, custody, and control of Defendants and that is the subject of ongoing**

22

discovery. DFA, therefore, expressly incorporates by references its objections to Interrogatory Nos. 1-3 as if fully set forth herein. DFA further objects to this Request because when Confidential Information or Trade Secret Information was "first developed" or "put into use," as DFA understands the request, is not relevant to the claims or defenses at issue and is disproportional to the needs of the case because the burden of identifying such information is far outweighed by the benefit of the proposed discovery, if any.

41.    Documents in existence between January 1, 2020 and the present relating to the offboarding of employees from DFA, including any termination or offboarding checklists.

RESPONSE: DFA objects to this Request as overly broad to the extent it seeks documents and information that are not relevant to the claims or defenses at issue in the litigation and is not limited to facilities, products, or business segments at issue. Additionally, as drafted, this request could be read as seeking documents protected by the attorney-client privilege and/or work product doctrine. DFA further objects to the Request as vague and ambiguous to the extent it seeks any document in existence over the last six years in any way relating to the "offboarding" of employees from DFA. Based on DFA's understanding of this request and reasonable investigation to date, DFA is not aware of any responsive documents.

42.    Documents in existence between January 1, 2020 and the present relating to the steps that DFA utilized to ensure that electronic confidential information or trade secret information was not retained by employees when such an individual's relationship with DFA ends.

RESPONSE: DFA objects to this Request as duplicative of Request No. 35 and incorporates its response to that request herein. DFA further objects to this Request as vague, ambiguous, and overly broad to the extent it seeks documents "in existence" over the last six years in any way relating to any step DFA utilized to ensure that electronic confidential information or trade secret information was not retained by employees when such an individual's relationship with DFA ends. Every document in existence over the last six years relating in any way to the steps DFA utilized to protect its information and ensure such information was not retained by employees upon termination is not relevant to the claims and defenses at issue or proportional to the needs of the case. Westrock did not announce its competing facility until December 2022, and the Individual Defendants did not terminate their relationships with DFA until approximately the same time. DFA likewise objects to this request to the extent it seeks documents protected by the attorney-client privilege and/or work-product doctrine. DFA will produce representative copies of the Employee Non-Disclosure, Ethics, and Conflict of Interest Agreement, including those signed by the Individual Defendants as stated in response to these requests; copies of the separation agreements signed by Individual Defendants Isakson and Izdepski, which illustrate additional steps DFA utilized to ensure electronic confidential and trade secret

23

**information was not retained by such employees upon their departure from DFA; and DFA's September 10, 2024 Cease and Desist letter.**

43.     The complete employee file for each of the Individual Defendants.

**RESPONSE: DFA objects to this Request as overbroad because it appears to ask for any document within the Individual Defendants' personnel file, regardless of its relation to the claims and defenses of this case. Such information is not relevant to the claims or defenses at issue. DFA further objects to this Request to the extent it seeks information protected by the attorney-client privilege and/or work product doctrine, and/or any other applicable privilege or protection.**

**DFA will produce personnel files for each Individual Defendant to the extent such documents reflect information relevant to the claims and defenses of this case.**

44.     Documents regarding the creation, establishment, and refinement of processes to

support the products referenced in Paragraph 15 of the Complaint.

**RESPONSE: DFA objects to this Request as overly broad and unduly burdensome as it is unlimited in time and seeks documents regarding the creation, establishment and refinement of processes to support shelf-stable, ready-to-drink coffee products for over a 30-year period. Retort bottling is a complex process, and this request would require DFA to search for, review, and produce documents spanning multiple decades, business units, and custodians. Any document over a more than 30-year period regarding the creation, establishment, or processes to support such products is not relevant to the claims and defenses at issue or proportional to the needs of the case. The burden and expense to identify, search, and produce this information far outweighs any potential benefit, particularly since the Request is not limited to any specific process, timeframe, or custodian. DFA further objects to this Request to the extent it seeks information protected by the attorney-client privilege and/or work product doctrine, and/or any other applicable privilege or protection.**

**DFA is willing to meet and confer to clarify and narrow the scope of this request, such as by limiting it to specific processes, relevant timeframes, or key custodians, and to identify documents most relevant to the claims and defenses in this action.**

45.     Documents and communications regarding the Conway, Arkansas manufacturing

facility referenced in Paragraph 5 of the Complaint.

**RESPONSE: DFA objects to this Request as overly broad and unduly burdensome as it is unlimited in time and contains no meaningful subject matter limitations. DFA further objects to this Request as vague as it seeks any documents and communications "regarding" the Conway, Arkansas manufacturing facility with no additional context. This Request appears to be duplicative of Requests 18 and 20, and DFA refers Defendant Westrock to its responses therein.**

24

46.    Documents and communications regarding the report referenced in Paragraph 25 of the Complaint.

**RESPONSE:**

47.    Documents regarding the "specific recipes for products" referenced in Paragraph 26 of the Complaint, including the source of the recipes and all documents regarding the development of the recipes.

**RESPONSE: DFA objects to this Request as unnecessarily duplicative of Request Nos. 12, 21, and others seeking information related to Defendants' improper acquisition, disclosure, and/or use of DFA's Confidential Trade Secret Information, including specific recipes, and information communicated by the whistleblower. DFA refers Defendant to DFA's responses and objections to those requests and expressly incorporates the same as though fully set forth herein. DFA also objects to this Request as overly broad and vague, including because is unlimited in time and seeks any document in any way regarding confidential recipes as well as the "source" of such recipes and any document regarding the development of the recipe. DFA further objects to this request as it seeks documents and information subject to non-disclosure or confidentiality agreements with third parties, the disclosure of which would violate DFA's contractual obligations and the privacy and confidentiality interests of others. This Request is further objectionable to the extent it asks DFA to produce copies of the very information it seeks to protect through this litigation and without the entry of appropriate protective order. Moreover, the full extent of the information improperly taken, acquired, used, or disclosed by Defendants, including specific recipes, is information that is uniquely within the knowledge, possession, custody, and control of Defendants and that is the subject of ongoing discovery. DFA will provide a list of the Confidential and Trade Secret Information taken, acquired, disclosed, and used by Defendants. Further, to the extent discovery reveals the full extent of the specific recipes Defendants improperly acquired, disclosed, and used, DFA is willing to meet and confer with Defendant to discuss supplementing this response to provide additional and nonprivileged, responsive information regarding specific recipes that discovery reveals Defendants took, acquired, disclosed, and/or used and that are relevant to the claims and defenses at issue and after the entry of a suitable protective order.**

48.    Produce all documents supporting the computation of damages provided in DFA's

Rule 26(a) Initial Disclosures.

**RESPONSE: DFA objects to this Request to the extent it can be read to request documents or communications protected by the attorney-client privilege and/or work product doctrine. DFA further objects to this Request to the extent it seeks information that is the subject to expert discovery and seeks to impose on DFA a burden greater than that required by the Federal Rules of Civil Procedure. DFA will produce such information consistent with its obligations under the Federal Rules of Civil Procedure and the scheduling order entered by the Court.**

49.    Produce all financial projections and/or proformas prepared by or for DFA from

January 1, 2020 to the present.

**RESPONSE: DFA objects to this Request as overly broad, including because it contains no meaningful subject matter limitations and seeks documents and information that are not relevant to the claims or defenses at issue. All financial projections and/or proformas prepared by or for DFA since January 1, 2020, are not relevant to the claims and defenses or proportional to the needs of the case, given the highly confidential and competitively sensitive nature of the requested information when weighed against the relevance, if any. DFA further objects to this request to the extent it can be read to request documents or communications protected by the attorney-client privilege and/or work product doctrine. To the extent Defendant contends such information is relevant to DFA's damages, and that is the subject to expert discovery, DFA will produce such information consistent with its obligations under the Federal Rules of Civil Procedure and any scheduling order entered by the Court.**

50.    Produce all business plans prepared by or for DFA from January 1, 2020 to the

present.

**RESPONSE: DFA objects to this Request as overly broad, including because it contains no meaningful subject matter limitations and seeks highly confidential and competitively sensitive information that is not relevant to the claims or defenses at issue. All business plans prepared by or for DFA over the last six years is not relevant to the claims and defenses at issue. DFA further objects to this Request to the extent it can be read to request documents or communications protected by the attorney-client privilege and/or work product doctrine.**

51.    Produce documents sufficient to show all revenues received by DFA from January 1, 2020 to the present, including documents sufficient to show the source(s) of all such revenues, broken out such that Westrock can determine which revenue was derived from the Joint Venture Agreements referenced in Paragraph 16 of the Complaint and which was not.

> **RESPONSE: DFA objects to this Request as overly broad, vague, and unduly burdensome, including because it contains no meaningful subject matter limitations and seeks documents sufficient to show "all revenues" received by DFA over a six-year period of time –- from January 1, 2020 to present — along with documents "showing" or "illustrating" the source of said revenues, regardless of the relation to the relevant business segment or products of this litigation. DFA further objects to this Request as vague and ambiguous, as the request for documents "showing" or "illustrating" could be read to encompass every DFA document that in any way relates to a profit at the company, regardless of its relation to this litigation. Such a request is unduly burdensome and not proportional to the needs of the case. DFA further objects to this request to the extent it can be read to request documents or communications protected by the attorney-client privilege and/or work product doctrine. Further, this request appears to seek information related to DFA's damages, which is the subject to expert discovery. DFA will produce all such information consistent with its obligations under the Federal Rules of Civil Procedure and any scheduling order entered by the Court.**

52.    Produce all profit and loss statements prepared by or for DFA from January 1, 2020 to the present.

> **RESPONSE: DFA objects this Request as overly broad, vague, and unduly burdensome, including because it contains no meaningful subject matter limitations and seeks all profit and loss statements prepared by or for DFA from over a six-year period of time –from January 1, 2020 to present— regardless of the relation to the relevant business segment or products of this litigation. Every profit and loss statement prepared by or for DFA since January 1, 2020 is not relevant to the claims and defenses at issue. To the extent this request attempts to seek information related to DFA's damages, DFA will produce that information consistent with its obligations under the Federal Rules of Civil Procedure and any scheduling order entered by the Court.**

53.     Produce all documents relating to the value of the "Confidential Information," "Confidential Trade Secret Information," and "confidential pricing information" identified in your Answers to Interrogatory Nos. 1, 2, and 3.

> **RESPONSE: DFA objects to this Request as overly broad, including because it is unlimited in time. Further, every documents relating in any way to the value of the Confidential and Trade Secret Information at issue is not relevant to the claims and defenses at issue. Additionally, this request suffers from the same defects as Interrogatories Nos. 1-3, including the fact that the full scope of the Confidential and Trade Secret information improperly taken by Defendants and acquired, disclosed, or used is information that is more properly within the unique knowledge and possession, custody, and control of Defendants and that is the subject of ongoing discovery. DFA, therefore, expressly incorporates by references its objections to Interrogatory Nos. 1-3 as if fully set forth herein. DFA further objects to this Request to the extent it can be read to request documents or communications protected by the attorney-client privilege and/or work product doctrine. As previously stated in DFA's responses to these requests, DFA will produce documents sufficient to show that the Confidential Information and/or Trade Secrets at issue was not generally known or readily ascertainable, that it derived independent economic value from secrecy, and/or that DFA made reasonable effort to maintain its confidentiality. To the extent Defendant attempts to seek information related to DFA's damages, that is properly the subject of expert testimony, and DFA will produce such information consistent with its obligations under the Federal Rules of Civil Procedure and any scheduling order entered by the Court.**

54.     Produce documents relating to the disclosure of the "Confidential Information," "Confidential Trade Secret Information," and "confidential pricing information" identified in your Answers to Interrogatory Nos. 1, 2, and 3 to the individuals listed in your Answer to Interrogatory No. 12.

> **RESPONSE: DFA objects to this Request as unnecessarily duplicative to the extent it seeks the same information sought by other, more tailored requests for production and/or interrogatories, including Interrogatory No. 8 (information related to the location of such information and those with access), 9-10 (information regarding measure to maintain secrecy), 12 (individuals with knowledge of the information), Request No. 35, among others. DFA, therefore, refers Defendant to its responses and objections to those Interrogatories and Requests and expressly incorporates the same herein. Additionally, this request suffers from the same defects as Interrogatories Nos. 1-3, including the fact that the full scope of the Confidential and Trade Secret information improperly taken by Defendants and acquired, disclosed, or used is information that is more properly within the unique knowledge and possession, custody, and control of Defendants and that is the subject of ongoing discovery. DFA,**

28

**therefore, expressly incorporates by references its objections to Interrogatory Nos. 1-3 as if fully set forth herein. DFA further objects to this request as overly broad and unduly burdensome because it is unlimited in time Further, this request is vague and ambiguous to the extent it requests DFA to produce documents in any way relating to the "disclosure" or DFA's Confidential Information and/or Trade Secret Information to the individuals identified in DFA's Answer to Interrogatory No. 12, which is also vague and overbroad. As stated in Interrogatory No. 12, the phrase "with knowledge" in Interrogatory No. 12 could be read to encompass a multitude of scenarios related to knowledge the documents exist, knowledge of the document contents, and/or knowledge the information is confidential. As written, Interrogatory No. 12 is overly broad and not proportional to the needs of the case because the burden or expense of identifying the proposed discovery outweighs any potential benefit.**

55.    As stated in response to other, more narrowly tailored requests, DFA will undertake a reasonable search to identify and produce responsive, nonprivileged documents sufficient to show that that the Confidential and Trade Secret Information at issue was not generally known or readily ascertainable and that DFA took reasonable efforts to maintain its confidentiality, including by limiting its disclosure. Documents or communications related to or supporting the allegation at Paragraph 24 that "Westrock will manufacture products that DFA would otherwise manufacture and/or will directly compete with products manufactured by DFA…."

> **RESPONSE: DFA objects to this request to the extent it can be read to request documents or communications protected by the attorney-client privilege, work product doctrine, and/or any other applicable privilege.**
>
> **DFA will produce a listing of all products it has manufactured from March 1, 2020 to the present, that are also manufactured by Westrock.**

29

56.    Documents regarding or relating to any competitive or market analysis for every market or market segment in which DFA participates related to the manufacture of shelf-stable, ready-to-drink coffee products and their constituent ingredients, including but not limited to: (1) milk and cream; (2) high-heat condensed skim milk ("HHCSM"); (3) the hauling of HHCSM; (4) retort bottling; (5) multi-serve iced coffee bottling; (6) liquid coffee extract developed for purposes of such ready-to-drink coffee products; and (7) energy beverages.

> **RESPONSE: DFA objects to this request as overly broad and unduly burdensome because it is unlimited in time and seeks documents regarding every competitive or market analysis for every market or market segment in which DFA participates, related to a broad array of products and business lines. DFA's business is substantially devoted to milk and cream and their derivatives, and the request as drafted would encompass essentially all of DFA's competitive and market analyses for its entire business, not just those relevant to the claims and defenses in this action. The request is not proportional to the needs of the case under Rule 26(b)(1), as the burden and expense of identifying, collecting, and reviewing such documents would far outweigh any potential benefit, particularly given that this request is not limited to a reasonable time frame, specific products, or relevant market segments. DFA further objects to this request to the extent it seeks information protected by the attorney-client privilege, work product doctrine or any other applicable privilege or protection. Based on its reasonable investigation to date, DFA is not aware of any competitive or market analysis for the relevant market segment or products at issue and relevant to this litigation.**

57.    Documents regarding or relating to actual or potential competition including, but not limited to any analyses of actual or potential competition or competitors, markets, market entry, market shares, accounts, customers, suppliers, territories, sales volumes, sourcing, or "SWOT" analyses of any actual or potential competitors or competition related to the manufacture of shelf-stable, ready-to-drink coffee products and their constituent ingredients.

> **RESPONSE: DFA objects to this Request as overly broad and unduly burdensome because it is unlimited in time and seeks documents regarding or relating to every actual or potential competitor, including any analyses of actual or potential competition, competitors, markets, market entry, market shares, accounts, customers, suppliers, territories, sales, volumes, sourcing, or "SWOT" analyses of any actual or potential competitor or competition related to the manufacture of shelf-stable, ready-to-drink coffee products and their constituent ingredients. As drafted,**

30

**this request appears to seek highly sensitive and competitive information related to every market or market segment in which DFA participates, related to a broad array of products and business lines, not just those relevant to the claims and defenses in this action. The Request is not proportional to the needs of the case under Rule 26(b)(1), as the burden and expense of identifying, collecting, and reviewing such documents would far outweigh any potential benefit, particularly given that this request is not limited to a reasonable time frame, specific products, or relevant market segments. DFA further objects to this Request to the extent it seeks information protected by the attorney-client privilege, work product doctrine or any other applicable privilege or protection. Based on its reasonable investigation to date, DFA is not aware of any nonprivileged, responsive documents for the relevant market segments or products at issue and relevant to this litigation.**

58.      Documents relating to competitive or market analyses, including economic, econometric, qualitative, and quantitative studies and projects, research, focus groups, or surveys on consumer preferences, consumer price sensitivity, consumer demographics, and market statistics (*e.g.,* demand elasticity, output, etc.) that DFA undertook, whether internally or externally, for any market or market segment in which DFA participates related to the manufacture of shelf-stable, ready-to-drink coffee products and their constituent ingredients.

**RESPONSE: None.**

59.      Documents relating to any analysis relating to Westrick's entry or potential entry for any market or market segment in which DFA participates related to the manufacture of shelf-stable, ready-to-drink coffee products and their constituent ingredients.

**RESPONSE: None.**

60.      Documents and communications regarding DFA's reduction of its HHCSM production capacity since January 1, 2020.

**RESPONSE: DFA objects to this Request as duplicative of Request No. 23 and, therefore, refers Defendant to DFA's objections and responses to the same and expressly incorporates them here. DFA further objects to this request as overly broad and unduly burdensome to the extent it seeks any document regarding DFA's reduction of its HHCSM production capacity since January 1, 2020, regardless of whether that reduction occurred at the relevant facilities and regardless of whether such reduction is relevant to the claims or defenses at issue. All documents and communications regarding any reduction of DFA's HHCSM production capacity at**

any facility since January 1, 2020, are not relevant to the claims and defenses. DFA further objects to this request to the extent it seeks information protected by the attorney-client privilege or work product doctrine, and/or any other applicable privilege.

DFA is willing to meet and confer with Westrock regarding the relevance of DFA's reduction of its HHCSM production capacity since March 1, 2020, for the Springfield and Cabool, MO plants and/or to discuss other appropriate temporal and subject matter limitations.

61.     Documents regarding DFA's conversion of its HHCSM production capacity to the production of other products since January 1, 2020.

RESPONSE: DFA objects to this Request to the extent it is duplicative of Request 25, which seeks documents regarding the conversion or modification of any line of processing, bottling, or manufacturing related to retort and ready-to-drink coffee products, which would encompass HHCSM, and incorporates herein and refers Westrock to DFA's response to that request. DFA further objects to this request as overly broad and not proportional to the needs of the case to the extent it seeks any document regarding DFA's conversion of its HHCSM production capacity since January 1, 2020, regardless of whether that conversion occurred at the relevant facilities, involved relevant products, and regardless of whether such conversion is relevant to the claims or defenses at issue. All documents and communications regarding any conversion of DFA's HHCSM production capacity at any facility since January 1, 2020, are not relevant to the claims and defenses. DFA further objects to this Request to the extent it seeks information protected by the attorney-client privilege or work product doctrine, and/or any other applicable privilege. DFA will undertake a reasonable search and will run search terms on agreed upon custodians, and work diligently with Defendants to develop appropriate search terms for those custodians, to identify and produce responsive, nonprivileged documents regarding DFA's conversion of its HHCSM production capacity from March 1, 2020 to present, at its Springfield and Cabool, Missouri facilities.

62.     Documents and communications regarding DFA's decision to end manufacturing operations at its Goshen, Indiana plant.

RESPONSE: DFA objects to this request as overly broad in that it is unlimited in time. DFA further objects to this request as seeking information protected by the attorney-client privilege or work product doctrine, and/or any other applicable privilege. DFA further objects to this request as seeking information that is not relevant to the claims or defenses of this case and for which the burden of searching and producing this information outweighs any potential benefit.

DFA is willing to meet and confer to identify the relevance of the Goshen, Indiana plant.

32

Respectfully submitted,

**HUSCH BLACKWELL LLP**

*/s/ Bryan O. Wade*
Bryan O. Wade, Mo. Bar No. 41939
(admitted *pro hac vice*)
Kayla L. Fowler, Mo Bar No. 76613
(admitted *pro hac vice*)
3810 E. Sunshine Street, Suite 300
Springfield, MO 65809
Telephone:  417-268-4000
Facsimile:   417-268-4040
Bryan.wade@huschblackwell.com
Kayla.fowler@huschblackwell.com


Peter Shults, Ark Bar No. 2019021
**SHULTS LAW FIRM LLP**
200 W. Capitol Avenue, Suite 1600
Little Rock, AR 72201-3621
Telephone: 501-375-2301
pshults@ShultsLaw.com

***Attorneys for Plaintiff Dairy Farmers of America, Inc.***

33

## CERTIFICATE OF SERVICE

I hereby certify that on December 15, 2025, a true and correct copy of the above and foregoing ***DFA's Response to Westrock's First Requests for Production***, was served via electronic mail to the following counsel of record:

Anna M. Berman
Kutak Rock LLP
2405 Grand Boulevard, Suite 600
Kansas City, MO 64108-2519
anna.berman@kutakrock.com

***Admitted Pro Hac Vice***
***Attorney for Defendant Westrock Coffee***
***Company***

Jonathan M. Moses
Wachtell, Lipton, Rosen & Katz
51 West 52nd Street
New York, NY 10019
JMMoses@wlrk.com

***Admitted Pro Hac Vice***
***Attorney for Defendants Westrock Coffee***
***Company and Westrock Beverage Company,***
***LLC***

Tina G. Fowler
Rachel A. Riso
Ellis Ellis Hammons & Johnson PC
2808 South Ingram Mill Road, A-104
Springfield, MO 65804
tfowler@eehjfirm.com
rriso@eehjfirm.com

***Admitted Pro Hac Vice***
***Attorney for Defendants Isakson, Izdepski,***
***Huckabay, Smith, Slagle, Bethurem and Davis***

Andrew King,
Kutak Rock LLP
124 West Capitol Avenue, Suite 200
Little Rock, AR 72201
andrew.king@kutakrock.com

***Attorney for Defendant Westrock Coffee***
***Company***

Graham Talley
425 West Capitol Avenue, Suite 1800
Little Rock, AR 72201
gtalley@mwlaw.com

***Attorney for Defendants Isakson, Izdepski,***
***Huckabay, Smith, Slagle, Bethurem and Davis***

/s/ Bryan O. Wade
Bryan O. Wade, Mo. Bar No. 41939
(admitted *pro hac vice*)
***Attorney for Plaintiff Dairy Farmers of***
***America, Inc.***

34